## State of Vermont Environmental Board v. Levi Chickering

[583 A.2d 607]

No. 88-607

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed October 19, 1990

---

*Jeffrey L. Amestoy*, Attorney General, and *William E. Griffin* and *Mark J. Di Stefano*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellant.

*Natt L. Divoll, Jr.*, Bellows Falls, for Defendant-Appellee.

**Allen, C.J.** The State of Vermont appeals from an order of the Windham Superior Court dismissing a civil action against defendant for violation of the subdivision provisions of Act 250, following presentation of the State's case. We reverse.

The State sued defendant in July 1986, alleging that he subdivided properties in Westminster into ten or more lots within a continuous ten-year period without an Act 250 permit, contrary to 10 V.S.A. § 6081(a).[1] The action sought civil penalties under 10 V.S.A. § 6006, repealed by 1989, No. 98, § 4(b), for defendant's intentional violation of Act 250. It is not necessary for the disposition of this appeal to detail every transaction. Suffice it to say that the numerous transactions involved conveyances from four original grantors to defendant, or to one or more of thirteen corporations whose stockholders were either defendant himself or his close relations.

Of the eighteen lots recited in the State's complaint, four originated from the first tract, and were conveyed to ultimate purchasers via two corporations, Flagship Properties, Inc., and Sno-Valley Corporation. Six originated from the second tract, and were conveyed to ultimate purchasers via three corporations: Naturlich, Ltd., Shedd Brook Corporation, and Forop, Ltd. The third tract was sold as a single parcel successively to the Shedd Brook Corporation and then to the Muffin Mountain Corporation, and then from the Muffin Mountain Corporation

---

[1] 10 V.S.A. § 6081(a) states in relevant part:

 (a) No person shall sell or offer for sale any interest in any subdivision located in this state . . . without a permit.

to four ultimate purchasers via the Olyea Corporation, the Malpeque Corporation and the Max Norm Corporation. The fourth tract was divided first between the Obi Corporation and Flagship Properties, Inc., and then through three corporations (LesBeaux Properties, Ltd., Inland Industries, Ltd., and Agri Resources, Inc.) and individuals, including defendant, to four ultimate purchasers.

Discovery commenced and the State requested that defendant produce copies of his federal income tax returns and related schedules for the years 1980 through 1986, along with all work papers and other documents used to prepare those returns and schedules. Defendant produced all of the documents for inspection but declined to allow photocopying of a portion of the documents and papers. The State filed a motion to compel, but the court denied the State's motion.

Cross-motions for summary judgment were filed in October and November, 1987. The court denied both motions and set the matter for trial. Defendant moved for a directed verdict at the close of the State's case, which the court treated as a dismissal motion under V.R.C.P. 41(b)(2) and granted. The court concluded that the State had demonstrated "control" of nine of the eighteen parcels within the meaning of 10 V.S.A. § 6081(a) through eight corporations in which defendant had a controlling interest, but did not make a sufficient showing of requisite control of any of the other parcels, owned by close family members through closely held corporations, to bring defendant within the statutory proscription. The present appeal followed, and defendant cross-appealed the court's conclusions as to the nine parcels.

I. *The State's Appeal.*

A. *Dismissal of the Complaint.*

█ The central issue in this appeal is the court's dismissal of the complaint at the completion of the State's case. As we stated in *Blais v. Blowers*, 136 Vt. 488, 489, 394 A.2d 1124, 1124 (1978), a motion under V.R.C.P. 41(b)(2) "serve[s] the function served by a motion for directed verdict in a jury case." On a motion for a directed verdict, this Court must view the evidence in the light most favorable to the nonmoving party and exclude all modifying evidence. A motion for a directed verdict, and

hence a motion under V.R.C.P. 41(b)(2), must not be granted "where there is any evidence fairly and reasonably tending to justify a verdict in the nonmoving party's favor." *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 239, 552 A.2d 1201, 1202 (1988). Examining the evidence in the present case, we cannot agree with the trial court's assessment that there was no evidence fairly and reasonably tending to justify a verdict in the State's favor. The court did find that defendant controlled six corporations: Flagship Properties, Inc., Sno-Valley Corporation, Malpeque Corporation, LesBeaux Properties, Ltd., Inland Industries, Ltd., and Agri Resources, Inc., and therefore "controlled the subdivision of Parcels 1, 2, 3, 4, 14, 15, 16, 17, and 18, which is nine parcels." The dismissal was based on the absence of a tenth lot subdivided by a corporation controlled by defendant.

The definitions of "person" and "subdivision" are critical to the outcome of this issue. Under the then applicable law,[2] "person" was defined under 10 V.S.A. § 6001(14) as follows, in relevant part:

"Person" shall mean an individual, partnership, corporation, association, unincorporated organization, trust or any other legal or commercial entity, including a joint venture or affiliated ownership.

"Subdivision" was defined under 10 V.S.A. § 6001(19) as follows, in relevant part:

"Subdivision" means a tract or tracts of land, owned or controlled by a person, which have been partitioned or divided for the purpose of resale into 10 or more lots within a

---

[2] Subsequent to the events in question the Legislature amended the definition of "person" inter alia to specifically include "an individual's parents and children, natural and adoptive, and spouse, unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the parent, child or spouse." 10 V.S.A. § 6001(14)(A)(iv) (Cum. Supp. 1989). The State argues that the amended section confirms an earlier construction of the statute, while defendant contends the contrary, arguing that relatives were necessarily excluded from the original language of § 6001(14) since the Legislature took pains to add them specifically in the amended version. Since we are able to decide this appeal without resort to the amended definition of "person" as an aid to construction, we decline to consider either argument.

radius of five miles of any point on any lot, and within any continuous period of 10 years after the effective date of this chapter.

The definition of "subdivision" makes clear that it applies to any subdivided land "owned *or* controlled" by a person. However, it is apparent from the court's findings that it equated control and ownership, in effect finding the former only when it found the latter. The nine lots which the court attributed to defendant's control were all conveyed from original grantors to ultimate purchasers via a corporation in which defendant had at least a fifty percent ownership interest, and hence the court found defendant had control.[3] As to the balance of the nine lots in the complaint, the court found that defendant's ownership interest in the five intermediary corporations involved with the transfer of these lots between the original grantors and the ultimate purchasers was less than fifty percent, and hence did not confer control. The court also found that defendant and the particular relatives who were stockholders of these intermediary corporations were neither members of a "joint venture" nor in "affiliated ownership" for purposes of the definition of "person." Since the court could not find controlling stock ownership by defendant, either individually or in connection with the family members owning stock in the remaining intermediary corporations, it concluded that defendant was not a "person" who had "offer[ed] for sale any interest in any subdivision," within the meaning of 10 V.S.A. § 6081(a).

■ It is clear that under § 6001(19) control and ownership are independent criteria. The court gave scant consideration to the question of whether defendant exercised functional control over any of the five corporations which had been intermediate owners of the nine other lots in question, whether or not he had a controlling stock ownership interest in any of them. The court

---

[3] In his cross-appeal brief defendant contends that he may only be charged with controlling the precise percentage of a lot that he in fact owns. Thus, for example, if he owned fifty percent of each of eight lots, he could be charged with control of only a total of four lots. Defendant cites no authority in support of this argument, which, if accepted, would completely vitiate the criterion of control in favor of a test measuring only percentage of ownership in fact, contrary to both the language and sense of 10 V.S.A. § 6001(19). We therefore reject this argument.

did discuss the kinds of activities that defendant undertook in aid of one or more of the intermediary corporations and which might have evinced a controlling relationship apart from holding stock. However, it is clear in context that the court equated the concept of "control" strictly with either ownership by, or financial gain to, defendant:

> Now, there's been a considerable amount of evidence of different activities the Defendant conducted. He would on occasion show a property, meet with an engineer, attend a closing, deliver a check to a closing, suggest to potential buyers where he might obtain financing, confer with a potential buyer over a septic tank problem; and these activities would take place with respect to Westminster, Vermont, properties outlined by the State in Exhibit 14. And the question presented to the Court is whether that kind of activity which the State describes as acting in concert with is tantamount to affiliated ownership or joint venture under our statute.
>
> The court does not have any evidence of *profit or financial gain derived by the Defendant* with respect to transactions by corporations in which the Defendant did not have a shareholder interest; and that leads the Court to the conclusion that he, the Defendant, was not acting as a *joint venture* with respect to such transactions.
>
> Now the kind of activity the Court has just described does not reflect an incident of *ownership by the Defendant* in these transactions by other corporations in which the *Defendant does not have a shareholder interest.* (Emphasis added.)

The court misstated the central question. The question is *not* whether controlling activities are "tantamount to affiliated ownership," since a nonowner, which includes persons not owning directly and not owning via affiliated ownership, may completely dominate the activities of a venture in which the person has no ownership interest whatever. 10 V.S.A. § 6081(a) prohibits sale of a *subdivision* controlled by a person without an Act 250 permit. Under the definition of "subdivision," proof of a § 6081(a) violation need not include proof that the *corporation* in which title resides is owned by that person. No particular

degree of stockholding in the owning corporations is necessary as proof of control of the property if defendant's activities by themselves prove that he controlled the property.

A similar question of control of a subdivision was presented in *In re Eastland, Inc.*, 151 Vt. 497, 562 A.2d 1043 (1989). In that case, a record titleholder had subdivided the subject property into eight lots just prior to sale to the appellant. Appellant had subdivided another parcel about a mile away into six lots, so that a total of fourteen lots were involved. The Environmental Board ruled that § 6081(a) required a permit. We stated in affirming the Board's decision:

> Eastland insists that the word "controlled" denotes legal control. We disagree. It is true that we will enforce a statute according to its plain meaning, but the meaning of "controlled" in § 6001(19) is not entirely plain. Indeed, appellant's restrictive reading, if correct, would effectively make the term "controlled" superfluous.

*Id.* at 499, 562 A.2d at 1044–45 (citation omitted); see *In re Vitale*, 151 Vt. 580, 585, 563 A.2d 613, 616 (1989) ("For all practical purposes, petitioner controlled the .58-acre lot, although legal title remained in the seller."); cf. *Gilbertville Trucking Co. v. United States*, 371 U.S. 115, 117–22 (1962) (upholding Interstate Commerce Commission ruling that two corporations were in fact controlled by a common interest, in violation of federal law); *Lorain Journal Co. v. Federal Communications Commission*, 351 F.2d 824, 829 (D.C. Cir. 1965) (distinguishing actual from legal control), *cert. denied*, 383 U.S. 967 (1966).

Even if it were necessary to demonstrate, separate from the question of control of the subdivision property, that defendant controlled the intermediary corporations, that issue is also a practical, not a theoretical, one. Control of the corporation (particularly in cases like the present, where corporate records and observance of corporate formalities were at a minimum) may be inferred by proof that defendant fully controlled its activities. Control of a corporation is not limited to cases in which the person alleged to control holds a majority of the stock of the company. *United States v. Corr*, 543 F.2d 1042, 1050 (2d Cir. 1976) (evidence sufficient to go to jury on question of whether defendant in securities prosecution was a "control person,"

even though another person owned a majority of the stock of company in question); cf. *Sunshine Art Studios, Inc. v. Federal Trade Comm'n*, 481 F.2d 1171, 1175 (1st Cir. 1973) (controlling person can be one who formulates and directs corporate policy or who is deeply involved in the important business affairs of the corporation).

■ Moreover, the question of control must be viewed with regard to the general proposition that "a court will disregard the fiction of a corporation's separate identity whenever the concept is asserted in an endeavor to circumvent a statute and defeat legislative policy." *Brennan v. Saco Construction, Inc.*, 381 A.2d 656, 662 (Me. 1978) (formation of two subsidiary corporations for purpose of avoiding state development site-location law). The quoted proposition does not stand in the stead of a careful and objective assessment of the facts surrounding the formation and undertakings of the thirteen corporations here in question. But it does allow the trier to examine those facts with function, rather than form, in mind, and to apply that examination to the crucial issue of control.

■ Nor is the question of control of the subdivision for purposes of § 6001(19) conclusively determined by whether defendant derived any personal financial gain from the corporations he allegedly controlled or whether his activities indicated that he was a joint venturer with the stockholders of any of those corporations. Especially where the record owners of the corporations were close family members, it is a fair inference that benefit to any of them is a benefit that defendant would act to promote and provide.

A good example of the confusion by the court of the concepts of ownership and control is its discussion of Max Norm Corporation, which defendant's son wholly owned. Defendant lent $10,000 to Max Norm Corporation at a time when defendant's son was not self-sufficient and in fact was claimed as a dependent on defendant's income tax return. Defendant's former bookkeeper testified that she prepared deeds for Max Norm Corporation in defendant's offices and at his direction, that defendant possessed Max Norm Corporation checkbooks and those of other intermediary corporations, and that defendant had negotiated with brokers on behalf of Max Norm Corpora-

tion (as well as other intermediary corporations). Further, defendant became involved in the engineering problems of the corporations, helped secure financing, showed property to prospective purchasers, dealt with brokers at his offices, attended closings, handled mail, and prepared financial projections, without regard to whether he had a stock interest in the particular companies involved. Yet the trial court concluded in effect that there was no evidence "fairly and reasonably tending to justify a verdict" that defendant controlled Max Norm Corporation. Contrary to the court's conclusion, the evidence tending to demonstrate defendant's control of Max Norm Corporation and of virtually all of the intermediary corporations was substantial, and certainly sufficient to overcome a Rule 41(b)(2) dismissal motion.

Moreover, the evidence was sufficient to avoid a Rule 41(b)(2) dismissal even under the joint venture theory. "A joint venture . . . is a special relationship between two or more parties to engage in and carry out a single business venture for joint profit without any actual partnership or corporate designation." *Helfenbein v. Barae Investment Co.*, 19 Ariz. App. 436, 439, 508 P.2d 101, 104 (1973); see *O'Connell v. Pharmaco*, 164 Ill. App. 3d 68, 72, 517 N.E.2d 688, 691 (1987). The evidence is ample that many members of his family cooperated with defendant as the dominant and moving member to achieve a coordinated set of goals to purchase and resell the several Westminster properties arising from the four originating tracts. Defendant involved his children Mark and Kelly Chickering, his mother Irene Chickering, his sisters Patricia Koson and Donna Galloway, his cousin Chet Mileski, and his brother-in-law Elwin Higley. The evidence presented strongly suggested an overall purpose to purchase property, transfer it among family members using multiple corporations in different formal ownership but limited to the identified family members, and to finance purchases and sales for each other, all led by defendant.

In order to avoid dismissal, it was not the State's burden to prove the existence of a joint venture. For purposes of a Rule 41(b)(2) analysis, it sufficed if the evidence presented by the State reasonably tended to justify a conclusion that defendant

and his close relatives had agreed upon a plan amounting to such a venture. The evidence did reasonably tend to demonstrate agreement on a single plan to purchase and resell the numerous lots carved out of the four originating tracts, with defendant assuming a major investment and management role, and with his relatives agreeing to accept ownership roles in the several intermediary corporations, to perform some functions on behalf of the plan, and to receive and retain the profits that flowed to the several corporations as purchasers and resellers of land. And given what was at least some evidence tending to show an overall plan for the purchase and resale of land from the four tracts, the existence of a joint venture theory cannot be said to founder as a matter of law because defendant did not have an ownership interest in every constituent corporation. Cf. *Mislosky v. Wilhelm*, 130 Vt. 63, 69, 286 A.2d 267, 271 (1971) ("[A] single property may be acquired and owned jointly although title is taken in the name of only one of the coadventurers.").

■ In sum, the record contained ample evidence reasonably tending to justify a verdict in the State's favor, either on the theory that defendant alone controlled sufficient interests in the tracts of land, or that he violated the statute by undertaking a joint venture or affiliated ownership with his close relatives.

B. *Motion to Compel.*

■ The State next argues that the court erred in denying its motion to compel production of tax returns and related documents which defendant produced but would not allow the State to copy. Relevancy is not the issue. Rather, defendant argues that tax returns themselves—the federal 1040 forms—are sensitive, personal documents that can be easily recopied to the detriment of his privacy. Defendant argues that V.R.C.P. 34(a) allows a litigant "to inspect and copy," but not to "photocopy." The argument is without merit. Defendant did not demonstrate that the information in the documents requested for copying was outside the permissible scope of discovery, or even less relevant than the documents that he allowed to be copied. Photocopying relevant documents, especially in a case involving numerous and complex business and financial transactions, is an essential concomitant to effective discovery. In any event,

defendant's election to supply certain records for review only, but not for photocopying, is unsupported by Rule 34 or case precedent. See *Diapulse Corp. of America v. Curtis Publishing Co.*, 374 F.2d 442, 445 (2d Cir. 1967).

## C. *Denial of State's Motion for Summary Judgment.*

 ██ The State contends that the trial court should have granted its motion for summary judgment as to defendant's liability, since there were no material facts in dispute and the State was entitled to judgment as a matter of law. In seeking to uphold the court's findings as to the nine lots which the court attributed to defendant's control, and to reverse its findings as to the balance of the eighteen lots, the State appears to argue that there was no genuine issue of material fact as to defendant's control over any of these lots—that is, that the summary judgment standard was met under V.R.C.P. 56. But as strong as the State's evidence of control might have been, the trial court was correct in declining to rule that no genuine issue existed as to any of the lots in question. Summary judgment is not a substitute for a determination on the merits, so long as evidence has been presented which creates an issue of material fact, no matter what view the court may take of the relative weight of that evidence. See *Pierce v. Riggs*, 149 Vt. 136, 139–40, 540 A.2d 655, 657–58 (1987). In the present case, defendant vigorously contested the allegations contained in the State's complaint and was ready to present evidence in his defense in the event his own dismissal motion was denied. In no sense might it be said as to any lot that the State has demonstrated the absence of a genuine issue as to any material fact within the meaning of V.R.C.P. 56.

## II. *The Cross-Appeal.*

 Defendant argues that the trial court should not have found that he controlled the subdivision of parcels 1, 2, 3, 4, 14, 15, 16, 17, and 18—a total of nine parcels. The court did make what appeared to be findings in the State's favor as to these parcels. But while the evidence supporting these findings is ample, the findings were premature. As we have indicated, the State's own motion for summary judgment had been earlier considered and was properly denied. No motion by the State,

either for summary judgment or dismissal, was pending when defendant moved for a directed verdict. Defendant's motion did not constitute a waiver of his right to present his defense and did not authorize the court to make collateral findings as to the nine lots over which it concluded control by defendant had been demonstrated.

As the matter is to be remanded for further proceedings, the court will have the opportunity to reconsider its findings as to the subject lots after the presentation of defendant's case.

*The judgment of the superior court is reversed and the case remanded for further proceedings in accordance with this opinion.*