## In re Grievance of Robert Gobin

[610 A.2d 150]

No. 91-094

Present: **Allen, C.J.\*, Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 15, 1992

*James S. Suskin,* Vermont-NEA, Montpelier, for Plaintiff-Appellant.

*Lee B. Liggett,* Burlington, and *Arthur P. Menard,* Chelsea, Massachusetts, for Defendant-Appellee.

**Gibson, J.** Grievant Robert Gobin appeals from an order of the Vermont Labor Relations Board (VLRB or Board) dismissing his grievance. The Board ruled that grievant had not presented a claim over which it had jurisdiction because he had not established a prima facie case that the University of Vermont

---

\* Chief Justice Allen was present at oral argument but did not participate in the decision.

(UVM) had applied a rule or regulation against him in a discriminatory manner. We reverse.

Grievant has taught health and physical education for UVM's College of Education and Social Services (CESS) since 1965. UVM initially hired grievant as an assistant professor, at a salary approximately $1,200 higher than the mean salary for UVM assistant professors. He was promoted to full professor by the 1972–1973 academic year. In 1988–1989, his salary was $6,000 lower than the mean salary for full professors at the University.

In 1988, grievant initiated an internal appeal relative to his 1988–1989 salary. He claimed that his salary had been "compressed"—i.e., diminished over time in relation to the salaries of his peers—because of factors unrelated to professional performance. He sought the "standards and criteria" used to assess salary compression, and asked that his salary be adjusted upward. During the appeal, grievant sought salary data for individual UVM faculty members in order to substantiate his claim. UVM denied this request, claiming that individual salaries were confidential.

In 1989, grievant filed a formal grievance with the faculty grievance committee. Grievant again requested individual salary data from UVM, which again declined to provide the information. The committee rejected grievant's substantive claims, but expressed dissatisfaction that UVM had not provided him with more information on his peers' compensation.

On January 29, 1990, grievant appealed to the VLRB. In 1988, the Legislature gave the Board jurisdiction to hear grievances brought by employees of the University of Vermont. See 3 V.S.A. §§ 901, 926. After hearing four days of testimony by grievant, the Board, by a two-to-one vote, granted UVM's motion to dismiss the grievance. The Board found that grievant had failed to establish that UVM had salary decompression standards that it applied discriminatorily against grievant, and dismissed the grievance for lack of jurisdiction.

I.

The central issue is the propriety of the Board's dismissal of the grievance at the completion of the grievant's case. A motion to dismiss under such circumstances is equivalent to a motion for directed verdict, and in deciding such a motion, the

Board must view the evidence in the light most favorable to the nonmoving party, excluding all modifying evidence. See *State Environmental Board v. Chickering*, 155 Vt. 308, 311, 583 A.2d 607, 609 (1990). The Board must not grant the motion if there is any evidence fairly and reasonably tending to justify a decision in favor of the nonmoving party. *Id.* at 312, 583 A.2d at 609.

■ Here, the Board erred in finding that grievant had not identified a rule or regulation that may have been applied against him discriminatorily. Title 3 V.S.A. § 902(14) defines "grievance" as follows:

> 'Grievance,' means an employee's, group of employees', or the employee's collective bargaining representative's expressed dissatisfaction, presented in writing, with aspects of employment or working conditions under collective bargaining agreement or the discriminatory application of a rule or regulation, which has not been resolved to a satisfactory result through informal discussion with immediate supervisors.

Because there is no collective bargaining agreement between the parties, grievant must allege and prove the discriminatory application of a rule or regulation. Failure of an employer to follow a binding rule constitutes an actionable grievance. *Nzomo v. Vermont State Colleges*, 136 Vt. 97, 102, 385 A.2d 1099, 1102 (1978).

Grievant cites provisions of the UVM Officers' Handbook, the CESS By-Laws and an April 1988 memorandum by the University Provost setting out "Guidelines for the Distribution of Salary Adjustments" as rules governing salary adjustments. Although the Officers' Handbook enumerates only general principles concerning salary adjustment, both the CESS By-Laws and the Provost's Guidelines provide more detailed procedures. The By-Laws deal specifically with the instant grievance. In particular, they mandate that "the salary figure being recommended [be considered] in a historic context in relation to peers with like rank, years of experience, etc." The Provost's Guidelines require that "[i]n assigning salary increases, unit administrators and deans and directors must take into account historical patterns that may have compressed or widened salary differences inappropriately among individual faculty members."

The Board found that the Officers' Handbook and the CESS By-Laws were formally adopted as rules governing, respectively, the administration of UVM and a college within UVM. The Board also found, however, that the Provost's Guidelines were not binding rules, a finding that governed the outcome of its opinion. The Board reasoned that the Guidelines were issued autonomously by the Provost, without formal review, and were intended to "guide," not govern, the administration of the University. Thus, the Board concluded, grievant could not make out a claim under § 902(14) because he could not point to a rule concerning "specific salary decompression standards" that may have been applied to him unfairly.

In support of the Board's decision, the University elevates form over substance. It argues that the label "guideline" means that the Provost's memorandum established only "an indication or outline of future policy or conduct," Webster's Third New International Dictionary 1009 (1976), as opposed to a "rule," which is "a regulation or bylaw governing procedure in a public or private body." *Id.* at 1986. But, the Provost's Guidelines mandate that administrators "must take into account historical patterns that may have compressed or widened salary differences inappropriately"; they are virtual mirror images of the CESS By-Laws governing the procedure to be followed and do not merely indicate or outline future policy or conduct. The definitions provided by UVM thus support the conclusion that the Guidelines are binding rules within the meaning of 3 V.S.A. § 902(14). Together with the evidence that grievant's salary is $6,000 lower than the mean salary for full professors at UVM, grievant has established a prima facie case under § 902(14). We reach this conclusion bearing in mind the standard of review set forth in *Chickering*, 155 Vt. at 311–12, 583 A.2d at 609, and that "[a]ll pleadings shall be liberally construed." VLRB Rules of Practice 12.10. We express no opinion on the merits of grievant's claim.

## II.

The Board also held that grievant had not established a grievance concerning the salary information he had requested because he failed to allege discriminatory treatment, i.e., that similarly situated faculty members had received dissimilar

treatment. The Board's approach is misguided, however, in that grievant's request was based only on his salary grievance. Presumably, he has no independent interest in learning how much his colleagues were paid. Although we are concerned that grievant did not pursue this information through discovery before the Board, see VLRB Rule 12.1 (adopting V.R.C.P. 26), we conclude that the Board should not bar grievant from pursuing such information from the University as is properly available through the discovery process. See 1 V.S.A. § 317(b) (individual salaries are a matter of public record); *Sprague v. University of Vermont*, 661 F. Supp. 1132, 1140 (D. Vt. 1987) (Public Records Law, 1 V.S.A. §§ 315–320, held applicable to UVM). Grievant requested the data so that he could attempt to show that he was treated differently from other faculty members. He should not be required to prove discrimination when he has not had access to evidence material to the underlying issue.

*Reversed and remanded.*