STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

|                                              |   |                        |
|----------------------------------------------|---|------------------------|
|                                              | } |                        |
| In re: Audet Wastewater System &             | } |                        |
|   Potable Water Supply Permit                | } | Docket No. 34-2-10 Vtec |
|       (Appeal of Ewen & Mitchell)            | } |                        |
|                                              | } |                        |

Decision and Order on Cross-Motions for Summary Judgment

Appellants Vicki L. Ewen and John R. and Dorothy R. Mitchell appealed from a decision of the Department of Environmental Conservation of the Vermont Agency of Natural Resources, which issued Wastewater System and Potable Water Supply (WSPWS) Permit No. WW-5-4533-2 to Appellee-Applicant R. Joseph Audet (Appellee-Applicant).

Appellants are represented by Christopher J. Smart, Esq.; and Appellee-Applicant is represented by David J. Blythe, Esq. The Agency of Natural Resources (ANR) is represented by Anne F. Whiteley, Esq., but has not taken an active role with respect to the pending motions.

On July 13, 2010, the Court resolved motions regarding whether a decision in a related civil case should be given any preclusive effect in this appeal (the 2010 Motion Decision). After conducting discovery on an extended schedule, the parties moved for summary judgment.

Appellants moved for summary judgment that neither the former house on the subject property nor the potable water supply system serving that house was sufficiently constructed so that it could be used for its intended purpose as of January 1, 2007, and therefore that Appellee-Applicant fails to qualify for the exemption he seeks. In turn, Appellee-Applicant moved for summary judgment asking the Court to "affirm

1

the issuance" of the WSPWS Permit.[1]  The following facts are undisputed unless otherwise noted.

Standard Applicable to Cross-Motions for Summary Judgment

A grant of "[s]ummary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 7 (citing Mooney v. Town of Stowe, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)).  When considering cross-motions for summary judgment, the Court gives each party "the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Communications, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington, Co., 155 Vt. 44 (1990)).  If the moving party's position is supported with an affidavit and documentary evidence, the opposing party "is required to 'come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue.'" U.S. Bank Nat'l Ass'n v. Kimball, 2011 VT 81, ¶ 15 (citing Alpstetten Ass'n, Inc. v. Kelly, 137 Vt. 508, 514 (1979)).  That is, a party opposing a motion for summary judgment may not rest on bare allegations alone. Johnson v. Harwood, 2008 VT 4, ¶ 5, 183 Vt. 157.

---

[1]  This is a de novo appeal; the Court must rule anew on the merits of Appellee-Applicant's application for Wastewater System and Potable Water Supply Permit No. WW-5-4533-2, applying the substantive standards that were applicable before the ANR. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g).  Contrary to Appellee-Applicant's argument, although the Court does give weight to the ANR's interpretation of its own rules, the statute does not allow the Court simply to determine whether an ANR factual decision is based on substantial evidence in the record, as would be the case in an on-the-record proceeding.  Cf, In re Stormwater NPDES Petition, No 14-1-07 Vtec, slip op. at 9, n. 2 (Vt. Envtl. Ct. Feb. 18, 2009) (Durkin, J.) (distinguishing between de novo review in appeals of ANR's own determinations and deference given to ANR determinations when used in separate permit proceedings).

Factual and Procedural Background

<u>Prior to Appellee-Applicant's 2001 Purchase of the Subject Property</u>

Appellee-Applicant owns an approximately quarter-acre parcel of property in the Town of Worcester (the Lot or the Audet Lot), with 150 feet of frontage on Hersey Road (Town Highway 26) and a lot depth of 75 feet. Appellee-Applicant purchased the Lot in early January of 2001 from Robert Pasho for approximately $2700.[2] Appellants' Ex. 8, at 37:22–24.

The Lot is bordered on its remaining three sides by an approximately 90-acre parcel of property owned and occupied by Appellants Mitchell since 1971. Appellant Ewen owns the parcel of property located directly across Hersey Road from the Lot and the Mitchell property. She has resided at the property since 1970 (except for a period from 1977–1978) and has owned the property since 1983.

A two-bedroom house (the former house) had been constructed on the Lot in 1958. It was neither inhabited nor repaired after 1990, but remained on the lot at the time of Appellee-Applicant's purchase of it in 2001. Appellants' Ex. 8, at 32:19–34:21; Appellants' Ex. 11, at ¶¶ 8, 9. The former house had been served by at least a dry well, and possibly also by a septic tank, for the disposal of wastewater.[3] See Appellants' Ex. 9, at ¶ 3; Audet Ex. 3, at ¶ 4.

---

[2] At the time of his purchase, Appellee-Applicant was aware from a 1990 Health Order, Appellants' Ex. 10, that the house then on the lot had been vacant since about 1990, and that the Health Order required that it could not be occupied until it had a functioning wastewater disposal system. Appellants' Ex. 11, at ¶ 8.

[3] In civil litigation in <u>Audet v. Town of Worcester</u>, No. 339-6-01 Wncv (Vt. Super. Ct. Mar. 28, 2003) (the 2003 Superior Court Decision), the Superior Court found that in January of 2001 the toilet was "connected to a septic tank buried next to the house and covered by an open shed attached to the house," that "the septic tank was connected to a drywell located near the house," and that the system was intended to function so that the solids would settle out into the septic tank and liquid would flow through a pipe into the dry well and thence into the ground. <u>Id.</u>, slip op. at 2–3, ¶¶ 11–13. However, the affidavit of Appellee-Applicant's engineer provided as Exhibit 3 to Appellee-

3

Robert Pasho acquired the Lot in 1968. In about 1970 Appellant Ewen's father terminated a piped connection from a shallow well on the Ewen property to the former house; no permission for that water source had been obtained and a connection to the former house from that water source was never restored. Appellants' Ex. 7, at ¶ 8.

Shortly after the Mitchells purchased their own property in 1971, the occupants of the former house on the Lot installed a shallow well (the Well Tile) on the Mitchell property near the Lot's southwest corner, without the Mitchells' knowledge or permission. Appellants' Ex. 6, at ¶ 8. In or about 1971 the occupants of the former house agreed not to use the Well Tile as a source of water for the former house on the Lot. Id. The Mitchells have never granted permission for anyone to take water from the Well Tile. Id.; Smart Aff (Feb. 4, 2011).

Between 1971 and when the property was vacated in 1990, the occupants of the former house were supplied by the occupants of the Ewen property from time to time with jugs of water from the Ewen spring, but at no time did the owners of the Ewen parcel agree to do so. Appellants' Ex. 7, at ¶ 9. In addition, during that period the occupants of the former house collected rainwater in barrels from the roof of the former house, and collected ditchwater in jugs from the Mitchell property, also without permission from the Mitchells. Appellants' Ex. 6, at ¶¶ 9–10; Appellants' Ex. 7, at ¶¶ 10–11.

During the 1980s, Mr. Pasho's sister, Lorraine Pasho, and a Ms. Madeleine Brown resided in the former house. 2003 Superior Court Decision, slip op. at 1. By late 1989, the two women were living at least "without running water." Id., slip op. at 2.

---

Applicant's present Motion for Summary Judgment states that the interior plumbing fixtures were connected by a pipe "to a drywell located in a shed adjacent to the dwelling structure," without any mention of a septic tank. As the motions for summary judgment now before the Court only relate to the potable water system for the former house, and to the former house itself, they do not require resolution of facts regarding the components of the wastewater system.

Appellee-Applicant does not dispute the lack of a water supply to the former house during this period.[4] The occupants vacated the former house in August of 1990. Id.

In September of 1990, the Town Health Officer, in conjunction with the Board of Health, issued a health order (the 1990 Health Order) requiring that the former house "not be occupied until an approved septic system is connected to the dwelling." Appellants' Ex. 10. The 1990 Health Order stated that "[t]he previous use of the dwelling without a septic system was found to present a health hazard through ground and surface water contamination." Id.; see also 18 V.S.A. § 613(b).

From 1990 onwards, the former house remained abandoned and uninhabited; no improvements were made to the former house or to its potable water or wastewater systems after that time. Appellants' Ex. 7, at ¶ 6; Appellants' Ex. 8, at 32:19–34:21; Appellants' Ex. 11, at ¶¶ 8, 9. The Superior Court found that, in January of 2001 when Appellee-Applicant had an excavator uncover the then-existing wastewater system, the former house "had no access to running water." 2003 Superior Court Decision, slip op. at 2, ¶ 11.

#### During Appellee-Applicant's Ownership Prior to the Present Application

Shortly after purchasing the Audet Lot in January of 2001, Appellee-Applicant applied to the Worcester Selectboard for a ruling that the Lot's wastewater system had been "in existence" as of 1996, and therefore was exempt under the Town's sewage ordinance then in effect, if used to serve a single-family house.[5] At that time,

---

[4] Appellee-Applicant does dispute the Superior Court's conclusion that the toilet piped to the drywell wastewater disposal system was not functioning, claiming that the only reason it did not function during that period was due to the lack of a water supply. However, the present motions do not address the functionality of the drywell wastewater disposal system.

[5] In 2001 Appellee-Applicant also proposed and obtained a municipal permit for a commercial use on the Audet Lot, as an alternative to a residential use. However, the

5

municipalities were authorized by statute to regulate wastewater disposal for single-family dwellings through municipal sewage disposal ordinances. See 24 V.S.A. § 3633(a) (1999). The Selectboard determined that no septic system had been "in existence" serving the former house in 1996; Appellee-Applicant appealed that determination to the Washington Superior Court, which resulted in the 2003 Superior Court Decision.[6]

In September of 2002, during a site visit taken by the then-Environmental Board at which Appellee-Applicant and his engineer were present, the participants observed that the Well Tile on the Mitchell property, near the southwest corner of the Audet Lot, was empty—that is, no water was in it—and that it lacked a cover. Appellants' Ex 13, at 13:12–19.

In Appellee-Applicant's own Proposed Findings of Fact, Conclusions of Law and Order in the civil proceeding, filed in approximately March of 2003, Appellee-Applicant stated that the water source for the former house on the Audet Lot was a spring on the Mitchell Property that had "been dry since at least January 2001 and is still dry at this time [approximately March of 2003]" and that the on-site drywell wastewater disposal system was "not currently operational due to the lack of an adequate water supply." Appellants' Ex. 2, ¶¶ 34, 35, and 37.

In 2004, Appellee-Applicant applied to the ANR for a wastewater disposal and potable water supply permit for a four-bedroom duplex on the lot; that application was

---

commercial proposal resulted in Act 250 litigation during which Appellee-Applicant abandoned commercial plans for the property. See generally In re Audet, 2004 VT 30, 176 Vt. 617.

[6] That court concluded that the drywell wastewater system serving the former house did not qualify as a system that was "in existence" in 1996, and therefore was not grandfathered under the municipal ordinance, because by 1996 it was "an abandoned septic system attached to an abandoned house" that was "uninhabitable and beyond repair." 2003 Superior Court Decision, slip op. at 1, 8. However, the condition of the drywell wastewater system is not at issue in the present motions.

denied.

A state statute enacted in 2002 gave the state the responsibility for regulating potable water supplies and wastewater systems, and established a five-year phase-out period for municipal regulation of such systems. 2001, No. 133 (Adj. Sess.); codified as 10 V.S.A. ch. 64. The statute provided that municipal ordinances (including zoning bylaws) regulating potable water supplies and wastewater systems would be superseded by the state statute and rules as of July 1, 2007. 10 V.S.A. § 1976(b).

Material facts are in dispute as to the state of deterioration of the structure of the former house as of January 1, 2007 or specifically during calendar year 2006. As early as 2001 the Town attorney described the house as "uninhabitable at this time because of lack of roof and other structural problems." Appellants' Ex. 12. Similarly, in 2002, an Environmental Board hearing officer, during a site visit at the Audet Lot, described the former house as "what appears to be a dilapidated residential building," that was an "uninhabitable building at this point in time," with "windows broken at least in the door itself," and "rather large pieces" of roofing material lying on the ground near the southwest corner of the building. Appellants' Ex. 13, at 9:8–11:3. In Appellee-Applicant's own deposition taken in October of 2010, he stated that "in the last four years . . . the roof started leaking, [and] had problems." Appellants' Ex. 8, at 116:2–4. Whether the four-year period referred to the period prior to the removal of the house in 2008, or to the period prior to the October 2010 deposition, it would encompass the status of the house as of January 1, 2007.

However, these facts are contradicted by statements in Appellee-Applicant's August 7, 2009 affidavit that the roof remained intact and weather-tight until approximately February 2008, and that the windows remained intact and weather-tight until the house was removed in approximately September 2008, Appellants' Ex. 11, at ¶ 9, and by an assertion in his deposition that it was not until the final year during which the house remained standing, (that is from approximately September of 2007

7

through September of 2008), that water had come in and compromised the wood permanently, and that windows remained broken during that period. Appellants' Ex. 8, 117:16–23.

In approximately late September 2008, Appellee-Applicant demolished and removed what was left of the former house on the Audet Lot. Audet Ex. 4, at ¶ 2.

In 2008, Appellee-Applicant next proposed to the ANR to construct a three-bedroom single-family house on the Audet Lot, to be served by a new on-site drilled well water supply and a new wastewater disposal system. The ANR initially granted WSPWS Permit No. WW-5-4533-1 in November 2008; however, after reconsideration in May 2009 the ANR instead remanded the three-bedroom application to the ANR regional office and advised Appellee-Applicant to submit an amendment application or face revocation proceedings.[7]

The Present WSPWS Permit Application at Issue in this Appeal

In June of 2009 Appellee-Applicant applied to the ANR for the Wastewater System and Potable Water Supply Permit that is the subject of the present appeal. That application proposed a new two-bedroom single-family house on the property, to be served by a new "replacement" drilled well and a "replacement" wastewater system.[8] The application is governed by 10 V.S.A. ch. 64 and the Vermont Wastewater System

---

[7] Appellants' appeal of the three-bedroom permit, Docket No. 287-12-08 Vtec, was dismissed to enable them to seek ANR reconsideration of that permit decision. Appellants' subsequent appeal of the ANR's reconsideration decision on the three-bedroom application (Docket No. 100-6-09 Vtec) was later dismissed as moot when Appellee-Applicant obtained the two-bedroom permit that is the subject of the present appeal, which superseded the three-bedroom proposal.

[8] Neither party has provided either a copy of the application or a copy of the permit appealed from. A January 15, 2010 letter from the ANR Regional Office Programs Manager to Appellee-Applicant's attorney, Audet Ex. 1, refers to the application as being for a "replacement 2 bedroom single family residence along with a replacement water supply and replacement wastewater systems." See also Audet Ex. 2.

and Potable Water Supply Rules (WSPWS Rules).[9]

On February 16, 2010, the ANR approved the two-bedroom application and issued Permit No. WW-5-4533-2 (the 2010 WSPWS Permit) to Appellee-Applicant. As far as it may be deduced from the approval letters, Audet Exs. 1 and 2, the 2010 WSPWS Permit was granted on the basis that the two-bedroom proposal was exempt from the requirements of the WSPWS Rules under the "reconstruction" exemption found in WSPWS Rules § 1-304(a)(21). Also as far as it may be deduced from the approval letters, the 2010 WSPWS Permit authorized Appellee-Applicant to construct a new two-bedroom house at the site of the demolished house and to install a new drilled well water supply and a new wastewater disposal system[10] to serve the new house. That is, in authorizing the issuance of the 2010 WSPWS Permit, the Regional Office Programs Manager determined that as of January 1, 2007 there had been a "substantially completed" residential dwelling, a "substantially completed" wastewater system, and a "substantially completed" potable water supply system on the Audet Lot. Audet Ex. 1, at 1; Audet Ex. 2, at 1–2.

Cross-Motions for Summary Judgment

Applicable Regulations

To determine whether the Audet Lot qualifies for an exemption from the permitting requirements of the WSPWS Rules, it is necessary to understand the interplay between the two exemption sections applicable to this analysis. This decision will refer to these two exemptions as the "substantially completed" exemption—

---

[9] See Vermont Wastewater System and Potable Water Supply Rules (2007), available at http://www.anr.state.vt.us/dec/ww/Rules/OS/2007/FinalWSPWSRuleEffective20070929. pdf. (September 20, 2007).

[10] Without the application or the permit, the Court cannot determine whether a wastewater disposal system with a leach field was proposed, or whether Appellee-Applicant proposed to upgrade the drywell, or proposed any alternative technology.

WSPWS Rules § 1-304(a)(1)(A)—and the "reconstruction" exemption—WSPWS Rules § 1-304(a)(21).

Appellee-Applicant argues that he is entitled to "reconstruct" the former house by building a new two-bedroom house in its place under the "reconstruction" exemption of § 1-304(a)(21). That section allows a building to be reconstructed without a permit (or permit amendment) if it is otherwise exempt (or has a permit) and was destroyed or voluntarily removed. WSPWS Rules § 1-304(a)(21). There is no dispute that the former house was voluntarily removed in 2008 and that it did not have a permit; therefore, as discussed in the 2010 Motion Decision, the threshold inquiry is whether the former house was "a building or structure that is exempt . . . under these Rules." WSPWS Rules § 1-304(a)(21).[11]

Appellee-Applicant claims that the former house is exempt under the "substantially completed" exemption of § 1-304(a)(1)(A).[12] As explained in the 2010 Motion Decision, Appellee-Applicant's proposal to "reconstruct" or build a new two-bedroom house in place of the house removed in 2008 will only be eligible for the reconstruction exemption if he shows that all three elements—the house itself, the potable water supply system, and the wastewater disposal system—were "substantially

---

[11] If the former house is ruled to be exempt, then the reconstruction exemption goes on to require the proposal to meet several additional standards. For a building that does not hold a prior permit, such as the former house on the Audet Lot, § 1-304(a)(21) requires that the building be reconstructed in approximately the same location; that there is no increase in design flow or other change in the operational requirements of the building's potable water supply or wastewater disposal system; that there has been no other change to the building, lot, potable water supply, or wastewater system that would require a permit under the WSPWS Rules, and that it must be reconstructed within two years unless the Secretary extends the time period. WSPWS Rules § 1-304(a)(21)(B)–(F).

[12] For the purposes of this analysis the Court will treat the "substantially completed" exemption as if it was intended to apply to buildings in the process of deterioration as well as to buildings that were under construction but not entirely finished as of the cut-off date.

completed" as of January 1, 2007.

Section 1-304(a)(1)(A) provides that "all buildings or structures, campgrounds, and their associated potable water supplies and waste water systems that were substantially completed before January 1, 2007" were then exempt from the permitting requirements of the WSPWS Rules.[13] The term "substantially completed" is defined, whether referring to a building or structure, a potable water supply, or a wastewater system, as being "sufficiently constructed so that it can be used for its intended purpose." WSPWS Rules § 1-201(a)(60). Note 2 to § 1-304(a)(1) requires the decisionmaker, in performing this analysis, to examine the "design flow and/or use" of a building, wastewater system, or potable water supply "as it existed no earlier than January 1, 2006," that is, only during the one-year period of calendar year 2006.

Status of Potable Water System Serving Former House on Audet Lot, as of January 1, 2007

The former house on the Audet Lot lacked an adequate water source long before calendar year 2006, and nothing presented to the Court by either party suggests that it had any source of water at all as of January 1, 2007. First, as of that date, and long before it, the Audet Lot lacked any legal right to pipe water from the shallow well on the Mitchell property to serve the former house. Moreover, the Mitchell Well Tile was a shallow well that was not actually producing water as of that date. All the evidence presented shows that it was dry in the years leading up to March of 2003 and nothing has been presented to controvert the conclusion that it remained in that condition

---

[13] Once a building qualifies under the "substantially completed" exemption, it remains in effect, provided that any action taken after January 1, 2007 for which a permit is required "is exempt under one of the other permitting exemptions listed in" § 1-304(a). § 1-304(a)(1)(A)(i).

through the end of 2006 and beyond.[14]

The potable water system was not sufficiently constructed to be able to be used for its intended purpose to supply water to the former house on the Audet Lot because it lacked a source of water. This is true regardless of whether the piping to the former house on the Audet Lot, leading from the location of the Mitchell Well Tile, remained in place or was intact during 2006.

Thus, because the potable water supply system serving the former house was not sufficiently constructed so that it could be used for its intended purpose as of January 1, 2007, the potable water supply system does not qualify as having been "substantially completed" as of that date. The former house was therefore also not able to be used for its intended purpose as of that date because it could not be inhabited without a source of potable water.

Accordingly, the former house on the Audet lot does not qualify as exempt under WSPWS Rule § 1-304(a)(1) and therefore Appellee-Applicant's proposed construction of a new two-bedroom house in the location of the former house does not meet the requirements for the reconstruction exemption in § 1-304(a)(21).

Status of Structure of Former House on Audet Lot, as of January 1, 2007

Aside from the status of the potable water supply to the former house on the Audet Lot, Appellants also argue that the structure of the house itself had deteriorated sufficiently as of January 1, 2007, so that it could not then be used for its intended

---

[14] It is important not to conflate the completeness of the house, including its water and wastewater systems, as of January 1, 2007, which is required for the "substantially completed" exemption, with the fact that a new on-site drilled well is proposed in the present application. That is, to qualify for the "substantially completed" exemption, the potable water system must have had an adequate water source during calendar year 2006. The fact that the newly-proposed potable water system does not require an off-site water source is not relevant to the exemption determination.

12

purpose as a residence.

Although Appellants may have evidence to present at trial that, as of January 1, 2007, windows in the house were broken and that the roof leaked or lacked roofing elements in part, material facts remain in dispute as to the level of deterioration of the house structure as of that date. Appellee-Applicant's August 7, 2009 affidavit, Appellants' Ex. 11, at ¶ 9, asserts that the roof remained intact and weather-tight until early 2008, and that the windows were weather-tight until the house was removed in September 2008. Similarly, Appellee-Applicant stated in his deposition that it was not until the final year during which the house remained standing (that is from approximately September of 2007 through September of 2008) that water came in and permanently damaged the structure of the house. Appellants' Ex. 8, 117:16–20.

As the Vermont Supreme Court has explained, "[s]ummary judgment is not a substitute for a determination on the merits, so long as evidence is presented which creates an issue of material fact, no matter what view the court may take of the relative weight of that evidence." Fritzeen v. Trudell Consulting Engineers, Inc., 170 Vt. 632, 633 (2000) (mem.) (citing Vermont Envtl. Bd. v. Chickering, 155 Vt. 308, 319 (1990)). That is, as the Court in Fritzeen went on to note, "[i]t is not the function of the trial court to find facts on a motion for summary judgment, even if the record appears to lean strongly in one direction." Id. (citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993).

Therefore, material facts remain in dispute as to the structural status of the former house on the Audet Lot as of January 1, 2007. Nevertheless, because the house had no source of potable water, the house was not sufficiently constructed so that it could be used for its intended purpose as a residence as of that date.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that

1.  Appellants' Motion for Partial Summary Judgment that the potable water system was not "substantially completed" as of January 1, 2007 is GRANTED, and Appellee-Applicant's Motion for Summary Judgment is DENIED, in that the potable water system had no water source as of that date. Appellee-Applicant therefore fails to qualify for an exemption from the permitting requirements of the WSPWS Rules under § 1-304(a)(1)(A) and (a)(21), concluding this appeal.

2.  Appellants' Motion for Partial Summary Judgment that the former house was not "substantially completed" as of January 1, 2007 is GRANTED, and Appellee-Applicant's Motion for Summary Judgment is DENIED, in that the former house was no longer sufficiently constructed so that it could be used for its intended purpose as a residence, at least because it lacked a source of potable water. Appellee-Applicant therefore fails to qualify for an exemption from the permitting requirements of the WSPWS Rules under § 1-304(a)(1)(A) and (a)(21), concluding this appeal.

Because this decision concludes the appeal, although material facts remain in dispute as to whether the structure itself had deteriorated enough to make the house uninhabitable regardless of whether it was served by a water supply, it is not necessary to schedule an evidentiary hearing on those facts. Appellants shall prepare a judgment order, approved as to form, to be filed with the Court on or before August 17, 2011.

Done at Berlin, Vermont, this 3rd day of August, 2011.

_____
Merideth Wright
Environmental Judge

14