2011 VT 68

## In re Shenandoah LLC, et al.
## (Appeal of Act 250 JO #9-066)

[27 A.3d 1078]

No. 09-388

Present: Reiber, C.J.[1] Dooley, Johnson, Skoglund and Burgess, JJ., and Eaton, Supr. J., Specially Assigned

Opinion Filed July 1, 2011

[1] Chief Justice Reiber was present for oral argument, but did not participate in this decision. Judge Eaton was not present for oral argument, but reviewed the briefs, listened to oral argument, and participated in the decision.

150

*David J. Shlansky* of *Shlansky & Co., LLP*, Vergennes, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Scot L. Kline* and *Nicholas F. Persampieri*, Assistant Attorneys General, Montpelier, for Amicus Curiae State of Vermont.

¶ 1. **Burgess, J.** Shenandoah, LLC, David Shlansky, Ting Chang, and other entities and individuals appeal from the Environmental Court's summary judgment decision upholding an Act 250 jurisdictional opinion. They challenge the court's attribution of certain development and subdivision activities to Shlansky and Chang. Appellants also argue that "person-based jurisdiction" under Act

250 violates the Vermont Constitution. Appellants failed to preserve their constitutional argument, and we do not address it. We affirm the court's jurisdictional opinion.

¶ 2. Appellants have a variety of overlapping interests. Shlansky averred below that in 2000 he created an irrevocable trust (Trust) to benefit his and his wife Chang's children. Chang is the trustee of the Trust. Shlansky, as settlor of the Trust, contributed the property that is the subject of the underlying jurisdictional opinion. Appellants did not disclose the purpose for which the Trust was established, and the Environmental Court presumed that Shlansky conveyed real estate to the Trust to benefit the minor children and for general estate planning purposes. As of June 2009, the Trust had two beneficiaries: Asa Shlansky, age nine, and Beatrice Shlansky, age seven.

¶ 3. The Trust has an ownership stake in various companies that have engaged in land-development activities in the relevant jurisdictional area. The Trust and Pedro Zevallos own Shenandoah, LLC, Ferrisburgh Realty Investors (FRI), and Bluefield, LLC. The Trust also owns Witherbee, LLC. Shlansky owns Mahaiwe, LLC.[2] The court found that FRI had created a twenty-one-lot planned residential development in September 2008. Bluefield created a two-lot subdivision in 2007. Witherbee constructed five housing units in March 2007, and Mahaiwe constructed four housing units in November 2005.

¶ 4. Shenandoah now seeks to build a ten-unit residential housing project known as the Shade Roller Planned Unit Development (Shade Roller PUD) in Vergennes. In August 2008, Zevallos, as Vice President of Shenandoah, requested a jurisdictional opinion to determine if the project required an Act 250 permit. See 10 V.S.A. § 6007(c). He also asked for clarification of "[t]he current total subdivision and housing unit counts for the owners and manager of Shenandoah, LLC, for Act 250 jurisdictional purposes" and "[w]hat the total housing unit counts for the owners and manager of Shenandoah, LLC, will be as a result of the Shade Roller [PUD]." This information is relevant to determining when the various parties will need to obtain Act 250

---

[2] Appellants did not submit any actual trust documents to support these representations or any other materials identifying corporate structure and responsibilities of the business entities involved in this case. Instead, they relied on affidavits from Shlansky and Chang, and thus, the recited information is based solely on the affiants' representations.

permits for purposes of future subdivisions and development. See *id.* § 6001(3)(A)(iv), (19).

■ ¶ 5. In a September 2008 decision, the district coordinator found that the project required an Act 250 permit because it involved the construction of a housing project with ten or more units. See *id.* § 6001(3)(A)(iv) (defining "development" under Act 250 to include the "construction of housing projects . . . with 10 or more units"). The district coordinator also attributed a certain amount of subdivision lots and housing units for purposes of Act 250 jurisdiction to FRI, Bluefield, Shenandoah, Shlansky, Chang, the Shlansky children, and Zevallos, based on their relationships with one another. Additional housing units were attributed to Shlansky and Chang based on Shlansky's control of Mahaiwe.

¶ 6. Appellants appealed portions of this decision to the Environmental Court. They submitted a statement of questions, and later filed a memorandum of law. The court construed this latter document as a motion for summary judgment, and in a September 2009 order, it upheld the district coordinator's jurisdictional opinion. As explained in greater detail below, it concluded that Shlansky and Chang benefit from the Trust's land-development activities, and thus, the Trust's development activities were attributable to them personally. Appellants challenge this conclusion on appeal. As support for their position, they point to the affidavits filed by Shlansky and Chang, and "the legal existence of the Trust, which is irrevocable."

■ ¶ 7. We begin with the statutory and regulatory requirements at issue. Generally speaking, an Act 250 permit is required before a "person" can sell any interest in a subdivision, commence construction on a subdivision or development, or commence development. 10 V.S.A. § 6081(a); see *id.* § 6001(14) (defining "person"). As relevant here, the term "subdivision" means "a tract or tracts of land, owned or controlled by a person, which the person has partitioned or divided for the purpose of resale into 10 or more lots within a radius of five miles of any point on any lot, or within the jurisdictional area of the same district commission, within any continuous period of five years." *Id.* § 6001(19). For purposes of a "subdivision," the term "person":

> (i) shall mean an individual, partnership, corporation, association, unincorporated organization, trust or other

legal or commercial entity, including a joint venture or affiliated ownership;

. . . .

(iii) includes individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived from the partition or division of land; [and]

(iv) includes an individual's parents and children, natural and adoptive, and spouse, unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the parent, child or spouse.

*Id.* § 6001(14)(A).

¶ 8. We held in *In re Spencer* that this statutory language was "intended to broaden the definition of a 'person' owning or controlling land to include those who may not be mentioned specifically in the conveyance, but who may nevertheless derive some benefit from partition or division of the land." 152 Vt. 330, 339, 566 A.2d 959, 964 (1989). We found this interpretation consistent with the Legislature's express finding that " 'to ensure appropriate Act 250 review, it is necessary to treat persons with an affiliation for profit, consideration, or some other beneficial interest derived from the partition or division of land as a single person for the purpose of determining whether a particular conveyance is subject to Act 250 jurisdiction.' " *Id.* (quoting 1987, No. 64, § 1).

¶ 9. Relying on *Spencer*, and the plain language of the statute, the Environmental Court found that all prior subdivisions attributable to Zevallos and the Trust were also attributable to Shenandoah because they were "individuals and entities affiliated with each other for profit." 10 V.S.A. § 6001(14)(A)(iii). Zevallos and the Trust also owned Bluefield and FRI, making these four parties "individuals and entities affiliated with each other for profit." *Id.* Therefore, the court attributed twenty-one lots that FRI had created in 2008 and lots created by Bluefield in 2007 to Zevallos, the Trust, and Shenandoah, for purposes of Act 250.

¶ 10. The court also considered how many subdivided lots should be attributed to the individual appellants for purposes of

Act 250. It explained that FRI was owned in part by the Trust. The Trust would accrue profits from FRI's activities, which would in turn benefit the Shlansky children. Because the definition of "person" specifically included "an individual's parents" and because the Shlansky children would receive or had received a beneficial interest from the Bluefield and FRI subdivisions, the court found that Shlansky and Chang also met the definition of "person" in 10 V.S.A. § 6001(14)(A)(iv). Thus, it found that the FRI and Bluefield subdivisions were attributable to Shlansky and Chang as well.

¶ 11. The court found that appellants proffered no specific evidence to refute the presumption that the term "person" included Shlansky and Chang as parents of the Trust's beneficiaries. To the contrary, it found that the evidence supported the statutory presumption. Shlansky had contributed to the Trust the property that was the subject of the subdivision and development at issue. As the parents of the sole beneficiaries, both of whom were minors, the Trust's land development activities would provide financial support and benefit to children whom Shlansky and Chang had a parental obligation to support. Thus, to the extent that the Trust provided funds for the education and care of the minor children, the court concluded that Shlansky and Chang received the collateral benefit of having their minor children provided for by the Trust.

¶ 12. The court reached a similar conclusion with respect to the number of housing units attributable to Shlansky and Chang for purposes of future "development." The term "development" is defined in 10 V.S.A. § 6001(3)(A)(iv) as:

> The construction of housing projects such as cooperatives, condominiums, or dwellings, or construction or maintenance of mobile homes or trailer parks, with 10 or more units, constructed or maintained on a tract or tracts of land, owned or controlled by a person, within a radius of five miles of any point on involved land, and within any continuous period of five years.

For purposes of "development," Act 250 Rule 2(C)(1)(a) defines "person" as:

> an individual, partnership, corporation, association, unincorporated organization, trust or other legal or commer-

cial entity, including a joint venture or affiliated owner-ship; a municipality or state agency; and, individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived from the "development" of land.

6 Code of Vt. Rules 12 004 060-2, available at http://www.michie.com/vermont [hereinafter Act 250 Rule]. Unlike the definition of "person" for purposes of "subdivisions," this definition does not presumptively include "an individual's parents and children, natural and adoptive, and spouse." 10 V.S.A. § 6001(14)(A)(iv).

¶ 13. The Environmental Court concluded that Shenandoah's housing units, once built, would be attributable to Shenandoah, Zevallos, the Trust, and the Shlansky children. It also found these units attributable to Shlansky and Chang based on its finding that to the extent that the minor children benefitted from the Trust's development activities, Shlansky and Chang benefitted as well. It reiterated that the profits accumulated by the Trust would provide for the Shlansky children, which would thereby diminish the parents' burden to provide for their minor children. The court noted the absence of any evidence to indicate that Shlansky and Chang would not benefit from the Trust's providing for their minor children. The court also attributed Witherbee's housing units to the Trust, Shlansky, Chang, and the Shlansky children. Additional housing units were attributed to Shlansky based on his ownership, management, and control of Mahaiwe.

¶ 14. The court's conclusions are compelled by the record. Appellants proffered that the Trust was established by Shlansky for the benefit of his and his wife's children and that the child beneficiaries were minors at the time of permit application and remain so now. The Trust's subdivision and development activities are, therefore, for the benefit of the children. The parents are financially responsible for their minor children so that, absent any evidence or argument to the contrary, any financial benefit to the children inures to the benefit of the parents.

¶ 15. As the Environmental Court concluded, that benefit to the parents renders them "persons" affiliated with subdivisions and development previously undertaken by entities owned or affiliated with the Trust as defined by Act 250. 10 V.S.A. § 6001(14)(A)(iii) (pertaining to subdivisions); Act 250 Rule 2(C)(1)(a) (pertaining to

development). In turn, such prior real estate involvement triggers Act 250 review jurisdiction, as the Environmental Court also determined. Under the first definition of "person," it is explicitly up to the parents to prove otherwise. See 10 V.S.A. § 6001(14)(A)(iv) (presuming to include the parents as "persons," "unless the individual establishes that he or she will derive no profit or . . . acquire any other beneficial interest from the partition or division of land by the . . . child"). While Act 250 Rule 2(C)(1)(a) does not contain the same explicit presumption, the effect is identical. The Environmental Court correctly concluded that, since Rule 2(C)(1)(a) includes as a person "any other beneficial interest derived from the development of land," the rule's definition encompasses a trust for one's minor children, absent evidence to the contrary. This is because any financial benefit to the minor children constitutes a financial advantage to the parents ordinarily responsible for their support.

¶ 16. As they did below, appellants seek to counter such a presumed benefit not with evidence to rebut the presumption, but by positing only that the Trust is irrevocable. There was neither evidence nor suggestion that the Trust's acknowledged benefit for the children was beyond the practical enjoyment of the parents or was somehow delayed, withheld, or unavailable to the children at the time of the land use proposed by the Trust and its subsidiaries. As explained by the trial court, the mere fact that the Trust for the minor children is irrevocable does not alter its beneficial impact on the parent.

¶ 17. Appellants' reliance on their affidavits is equally misplaced. Obviously, the Environmental Court was not bound by the bald assertions contained in these documents. Appellants provided no information to the court, and no actual documentation to support their conclusory statements that they had no "control" over the Trust's activities and derived no "benefit" from the Trust's land development activities. It is well-established that "ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion." 10B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738, at 346-56 (3d ed. 1998); see also *Lussier v. Truax*, 161 Vt. 611, 612, 643 A.2d 843, 844 (1993) (mem.) (reaching similar conclusion). The evidence provided by appellants supports the Environmental Court's findings, and the court's findings necessitate its conclusions. We therefore affirm its decision.

■ ¶ 18. Finally, we do not address appellants' constitutional challenge, which they raise for the first time on appeal. See V.R.E.C.P. 5(k)(4) ("An objection that was not raised before the Environmental Court may not be considered by the Supreme Court, unless the failure or neglect to raise that objection is excused by the Supreme Court because of extraordinary circumstances."); *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). There are no extraordinary circumstances that excuse appellants' failure to raise this argument below. By rule, appellants are limited to those issues identified in their statement of questions filed with the Environmental Court. V.R.E.C.P. 5(f). They did not raise a constitutional challenge in this document, and they are precluded from doing so now.

*Affirmed.*

¶ 19. **Skoglund, J.,** dissenting. I believe the Environmental Court erred in resolving the issue on summary judgment. I would reverse and remand this case for additional proceedings given the case's posture before the Environmental Court and the statutory structure at issue. Respectfully, I dissent.[3]

¶ 20. To prevail on a motion for summary judgment, the moving party must satisfy a stringent two-part test: first, there must be no genuine issues of material fact, and second, the moving party must be entitled to judgment as a matter of law. *Wesco, Inc. v. Hay-Now, Inc.*, 159 Vt. 23, 26, 613 A.2d 207, 209 (1992). Summary judgment is appropriate only when the materials before the court show that there is no genuine issue as to any material fact. See *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 466, 724 A.2d 454, 455 (1998). The Environmental Court, having found the evidence offered by appellants insufficient for a determination on the material fact in issue, should have simply denied summary judgment, thereby putting appellants to their proof in the de novo hearing to which they were entitled. 10 V.S.A. § 8503(b)(2); *id.* § 8504(h); V.R.E.C.P. 5(g) (stating that appeals to Environmental Court, including appeals of jurisdictional opinions, shall be by "trial de novo"); see *Bennett Estate v. Travelers Ins. Co.*, 138 Vt.

---

[3] I do concur with the majority's determination of appellants' third claim of error. *Ante,* ¶ 18. Appellants failed to adequately raise their constitutional argument below and may not do so now.

189, 191, 413 A.2d 1208, 1209 (1980) (remanding case where trial court converted motion to dismiss into motion for summary judgment without notifying parties and giving opportunity to supply additional materials).

¶ 21. Courts are not empowered to try issues of fact on a motion for summary judgment; they examine affidavits or other evidence to determine whether a triable issue exists rather than for the purpose of resolving the issue. *Braun v. Humiston*, 140 Vt. 302, 306, 437 A.2d 1388, 1389 (1981), *overruled on other grounds by Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 471 A.2d 224 (1983). To complicate the matter before the Environmental Court, there was no adversarial party to oppose summary judgment, or to argue that the case was not properly resolved on summary judgment, or to argue that there were contested material facts at issue. And, a material fact is at issue: do David Shlansky and Ting Chang, as parents, have a beneficial interest in the Trust's development activities. Instead of requesting further evidence, the court summarily decided the case *against* the movant, essentially holding that the proffered facts were so lacking as to prove their own negative.

¶ 22. In making its ruling, the Environmental Court held that Shlansky and Chang "have not fulfilled their evidentiary burden of exempting themselves from being included within the statutory definition of 'persons' contained in § 6001(14)(A)(iv)" because they failed to prove they would derive no "beneficial interest" from the Trust's development activities. On appeal, as below, appellants relied on affidavits. The affidavits stated that the affiants do not "derive any profit or consideration . . . or acquire any other beneficial interest" from the partition of the land or development activities. Rather than finding that further evidence was needed to decide the factual matter of the existence of a beneficial interest, the trial court wrote, "we conclude as a matter of law *from the undisputed facts*, even when viewed in a light most favorable to Appellants, that all Appellants . . . are 'persons' for purposes of Act 250 jurisdiction." (Emphasis added.) The court then held: "Appellants have not provided any factual foundation" to meet their burden of proof that they will not derive any profit, consideration, or any other beneficial interest from the land development activities. The court wrote "[t]heir general assertion that they derive no benefit from the Trust or other related entities cannot be viewed as fulfilling their burden of proof." It then cited

to *Gore v. Green Mountain Lakes, Inc.* in support, with a parenthetical that explained "to survive summary judgment, a party may not merely rely upon assertions or allegations." 140 Vt. 262, 266, 438 A.2d 373, 375 (1981). Reliance on *Gore* would have been appropriate had there been an adversarial party arguing for summary judgment, but there was not. If the court had reached the same conclusion after a full opportunity for appellants to develop a factual record after a de novo hearing, I would agree. While the majority may be correct in holding that the affidavits contained only "ultimate or conclusory facts and conclusions of law," *ante*, ¶ 17 (quotation omitted), a contested issue of material fact existed and appellants should have been allowed to go forward with their proof. I would therefore remand.

¶ 23. And, I suggest, on such a remand the court would be obligated to consider all relevant statutory language. The central question before the court was what constitutes a "person" for purposes of Act 250 jurisdiction. "Person" is defined broadly within the Act, see 10 V.S.A. § 6001(14), and we have recognized that the Act's aim is to "include those who may not be mentioned specifically in the conveyance, but who may nevertheless derive some benefit from partition or division of the land." *In re Spencer*, 152 Vt. 330, 339, 566 A.2d 959, 964 (1989). For purposes of a "subdivision," the term "person":

> (i) shall mean an individual, partnership, corporation, association, unincorporated organization, trust or other legal or commercial entity, including a joint venture or affiliated ownership;
>
> . . . .
>
> (iii) includes individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived from the partition or division of land; [and]
>
> (iv) includes an individual's parents and children, natural and adoptive, and spouse, unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the parent, child or spouse.

*Id.* § 6001(14)(A); see 6 Code of Vt. Rules 12 004 060-2, available at http://www.michie.com/vermont.

¶ 24. The Environmental Court concluded that Shlansky and Chang, as parents, benefit from the division/partition of land merely because their children would benefit from the Trust's development activities: "Profits accumulated by the Trust will provide for the children of David Shlansky and Ting Chang, which will thereby diminish the parents' burden to provide for their minor children." Before examining the strength of that analysis, it is important to recognize that § 6001(14)(B) identifies individuals and entities not presumed to be persons for purposes of the Act: "The following individuals and entities shall be presumed *not* to be affiliated for the purpose of profit, consideration, or *other beneficial interest* within the meaning of [Act 250], unless there is *substantial evidence* of an intent to evade the purposes of this chapter." 10 V.S.A. § 6001(14)(B) (emphases added). This presumption extends to those who take actions solely "as an agent of another within the normal scope of duties of a court appointed guardian, a licensed attorney, real estate broker or salesperson, engineer or land surveyor, unless the compensation received or beneficial interest obtained as a result of these duties indicates more than an agency relationship." *Id.* § 6001(14)(B)(ii). Shlansky operates as the Trust's attorney. In his affidavit he asserted that his role is that of an agent within the normal scope of duties of a licensed attorney. Chang is a trustee of the Trust and, by law, is strictly governed by requirements that she "administer the trust solely in the interests of the beneficiaries." 14A V.S.A. § 802(a). In her affidavit she avowed that she "is prohibited from obtaining profit or other beneficial interest from her position as fiduciary trustee." The court did not discuss § 6001(14)(B) in its decision, even though it was raised below by appellants. The majority ignores the section. I do not believe we can. And, as the case stands, I can see no evidence of an intent to evade the purposes of the chapter.

¶ 25. The statute presumes, for the purpose of counting subdivisions, that the term "person" includes an individual's parents "unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by . . . [the] child." 10 V.S.A. § 6001(14)(A)(iv). The key term for the Environmental Court was "beneficial interest." That term does not, as the court's opinion

suggests, mean any conceivable benefit whatsoever. Black's Law Dictionary defines "beneficial interest" as "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." Black's Law Dictionary 149 (7th ed. 1999). Redefining this term so broadly to include "collateral benefit" — the court's term — or any relief from parental obligations of support would make the parental presumption of personhood contained in § 6001(14)(A)(iv) virtually insurmountable. The majority affirms this broad expansion of the statutory term, holding that "any financial benefit to the minor children constitutes a financial advantage to the parents ordinarily responsible for their support." *Ante*, ¶ 15. I do not equate a financial advantage with a beneficial interest for purposes of the statute.

¶ 26. In order to apply the standard contained in § 6001(14)(A)(iv), however, it is critical to know how the Trust operates. Appellants argue that, because the Trust is "irrevocable," they receive no benefit from its land-development activities. I agree this assertion is likely insufficient for the trial court to evaluate, notwithstanding that it arrives before the court uncontested. But, without information about when and how income and/or assets from the Trust would be distributed to the beneficiaries, the opposite conclusion cannot be established. It may be that the children will not receive any value from the Trust until they are each eighteen years old, in which case there would no longer be any responsibility placed on the parents to support their offspring and the flaw in the court's analysis would be apparent. This information bears on any finding by the court of a beneficial interest received by Shlansky and Chang. Assuming the parents would benefit simply because their children received or will receive some unknown value at some unspecified time is to make an unfounded assumption of fact contrary to the evidence submitted by the moving party, and then use it as a basis for not merely denying the party's motion, but actually holding against it. It is one thing for the court to find affidavits insufficient to support a party's position, but it is quite another for the court to determine that no issue of material fact exists based on the court's own unsupported assumptions.

¶ 27. As with the subdivision analysis, there needed to be additional factual development before the issue of Shlansky and Chang's affiliation with the Trust's land-development activities could be properly addressed. This includes additional factual

evidence regarding the precise terms of the Trust and the corporate structure of the various entities at issue, an explanation of Shlansky's role as agent and manager and Chang's responsibilities as trustee, and presumably an evaluation of the weight of the evidence and the credibility of the witnesses. In addition to considering whether Shlansky and Chang receive a beneficial interest from the Trust's land-development activities, the court should have also evaluated whether, alternatively, these parties exercised "control" over the developments (or subdivisions) in question such that they should be considered "persons" for purposes of Act 250. See, e.g., *State Envtl. Bd. v. Chickering*, 155 Vt. 308, 315-16, 583 A.2d 607, 611-12 (1990) (explaining that "control" of a corporation for Act 250 purposes not limited to cases where a person holds majority of a company's stock, and court will disregard fiction of corporation's separate identity whenever concept asserted in endeavor to circumvent statute and defeat legislative policy).

¶ 28. Through this affirmance, the majority approves a procedure in which a party puts forth an unopposed motion for summary judgment — albeit lacking in evidence sufficient to allow the court to make a finding, one way or the other, of a contested material fact — and, instead of concluding that the matter cannot be resolved on summary judgment, the court determines there are no material facts at issue and grants judgment against the movant. The result in this case is an expansion of the statutory definition of "person" — a central jurisdictional prerequisite for Act 250 — so that any parent is swept into the Act 250 process if their child — dependent or not — benefits from a proposed land development. This is far beyond the broad definition of that term that we have recognized under the Act. See *Spencer*, 152 Vt. at 339, 566 A.2d at 964. Regardless of the merits of appellants' application, I would reverse and remand this case for further factual development and analysis.

¶ 29. I am authorized to state that Justice Dooley joins this dissent.