2012 VT 74

# In re Appeal of Charlotte Rumsey

[59 A.3d 730]

No. 11-356

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed August 31, 2012

*William R. Dysart, Vermont Legal Aid, Inc.,* Burlington, for Petitioner-Appellant.

*William H. Sorrell,* Attorney General, Montpelier, and *Christina Byrom,* Assistant Attorney General, Waterbury, for Respondent-Appellee.

¶ 1. **Dooley, J.** Petitioner Charlotte Rumsey appeals from a decision of the Vermont Human Services Board denying her Choices for Care (CFC) Services on a tie vote of the Board. The issue before the Board was whether petitioner met the eligibility requirements for either highest need or high need services. We hold that the Board decision fails to meet the requirements of the authorizing statute and was not a decision under 1 V.S.A. § 172. Accordingly, we reverse and remand.

¶ 2. Petitioner was seventy-four years of age at the time of the Board's evidentiary hearing and lives alone. She suffers from chronic seizure disorder, osteoarthritis of the knees and ankles, cerebral vascular disease, depression, anxiety, and obesity. She applied for CFC benefits to obtain home-delivered services to allow her to remain safely in her home. To avoid being placed on a waiting list, she must meet eligibility requirements for highest need or high ·need services.

¶ 3. The Vermont Department of Aging and Independent Living (DAIL) processed petitioner's application first by sending a Long Term Clinical Care Coordinator to meet petitioner in her home and evaluate her circumstances. This interview lasts between one and two hours. In petitioner's case, the Coordinator found that petitioner needed supervision for toilet use, mobility in bed, bathing, dressing, mobility, and personal hygiene. The Coordinator found that petitioner needed no assistance with meal preparation, because meals were supplied by Meals on Wheels, or with medication management, because others already provided that assistance. The Coordinator found that petitioner did not meet the eligibility requirements for highest need or high need services and that conclusion became the decision of DAIL. From that decision, petitioner appealed to the Board.

¶ 4. The Board acts first through a hearing officer. See 3 V.S.A. § 3091(b) (stating that the hearing "shall be conducted by the

board or by a hearing officer appointed by the board"); Vermont Human Services Board, Fair Hearing Rules § 1000.3(A), 4 Code of Vt. Rules 13 020 002-1 [hereinafter Rules]. Evidence is presented to the hearing officer. Rules § 1000.3(O). Proceedings related to the presentation of evidence and rulings on procedural matters are recorded. *Id.* § 1000.3(P). The record for the decision is "[t]he evidence presented, both oral and written, and any oral or written arguments submitted in a timely manner." *Id.* Based on that record, the hearing officer must make "findings, a recommended order, and a statement of reasons in support of that order." *Id.* § 1000.3(R).

¶ 5. The Board's responsibility with respect to findings is controlled by statute, 3 V.S.A. § 3091(c). Under the statute, either the hearing officer or the Board must issue findings of fact. *Id.* If the hearing is conducted by the hearing officer, the findings must be reported to the Board, and the Board must approve them as its own findings "unless good cause is shown for disapproving them." *Id.* The Board must "enter its order based on the findings." *Id.*

¶ 6. In this case, petitioner's appeal proceeded as specified in the Rules. The evidentiary hearing was held before a hearing officer on June 30, 2011. The witnesses were petitioner, her case manager from the Champlain Valley Area Agency on Aging, the case manager's supervisor, petitioner's treating physician (via telephone), a friend, and the DAIL Long Term Clinical Care Coordinator. The hearing officer issued her proposed findings of fact, a recommended decision to affirm the DAIL denial, and a statement of reasons on July 22, 2011. The Board met to consider this and other cases on August 3, 2011, with six of seven members present. After hearing argument, the six members tied on whether to accept the hearing officer's recommendation. The Board did unanimously accept the hearing officer's findings of fact. It decided that in the case of a tie vote, the "Department's original decision stands."

¶ 7. Following the Board decision, petitioner moved to reopen the case, seeking a Board decision based on the vote of all seven members. Petitioner also argued that the decision did not contain findings on the elements of the CFC eligibility standards. DAIL opposed the motion. The Board denied the motion. It concluded that the findings were complete. In response to petitioner's request for a vote by all seven members, the Board stated that,

if the case were reopened, there would be no guarantee "that all seven members would be present." The Board noted that it was following the rule of courts for instances where there is a tie vote and that reopening would only delay an authoritative decision from this Court on the meaning of the CFC regulations.

¶ 8. On appeal, both parties argue that we should reach the merits of the case, albeit each desiring a different result. In the alternative, petitioner seeks a remand for proper findings and to have all seven of the Board members decide the case. DAIL opposes the alternative and suggests that we instead declare the meaning of the regulations and remand for the Board to find the relevant facts and render a decision.

¶ 9. The major impediment to reaching the merits of this appeal, assuming that we would otherwise do so, is the state of the factual findings. Almost without exception, the findings of fact section of the Board decision contains only recitations of testimony with no findings of the hearing officer based on this testimony. For example, petitioner's treating physician gave strong testimony in support of petitioner's position relating her functional limitations and the risks of seizure to the standards in the CFC regulations. The Board's "findings" recite the evidence and make no independent findings based on that testimony. The same is true of the testimony of the case manager from the area aging agency and her supervisor. The same is true of almost all the testimony of the friend, who visits petitioner regularly and observes her functionality.

¶ 10. The hearing officer understood the significance of the testimony of petitioner's witnesses. The findings state: "As will be spelled out below, petitioner minimizes the difficulties she has caring for herself . . . [and therefore the Coordinator's] reliance on petitioner for information leads to information that does not provide a complete picture for an assessment." Unfortunately, what is "spelled out below" is pages of recitation of testimony with no findings of the hearing officer. In short, nothing was spelled out below.

¶ 11. At least since 1967, when we decided the case of *Krupp v. Krupp*, 126 Vt. 511, 514-15, 236 A.2d 653, 655-56 (1967), we have consistently held that recitations of evidence are not findings of fact and cannot be considered so. In the words of *Krupp*, they are "immaterial and are not for consideration." *Id.* at

515, 236 A.2d at 656. We have come to call such recitations *Krupp* findings.

¶ 12. In two recent decisions, we applied *Krupp* to the Human Services Board. In *In re M.G.*, 2010 VT 101, ¶ 14, 189 Vt. 72, 13 A.3d 1084, we reversed a Board decision because it was based on *Krupp* findings. We held explicitly that *Krupp* findings do not comply with the statutory obligation of the Board and the hearing officer to make findings of fact pursuant to 3 V.S.A. § 3091(c). *Id.* In *In re E.C.*, 2010 VT 50, ¶ 15, 188 Vt. 546, 1 A.3d 1007 (mem.), we also identified key factual recitations as *Krupp* findings, but were able to affirm the Board's decision because we could rely upon true factual findings that were mislabeled as reasons. See also *Harrington v. Dep't of Emp't Sec.*, 142 Vt. 340, 346, 455 A.2d 333, 337 (1982) (noting that findings can be found in section of decisions labeled as conclusions). In this case, however, there is no statement of reasons or conclusions because of the Board's tie vote. Other than the mandate, the only text in the decision is the part labeled as findings of fact.

¶ 13. Petitioner argues that the Board also violated its duty to make findings of fact because it did not make findings · on the key elements of the highest need and high need designations. For example, petitioner argues that she is eligible for highest need designation because she is an individual who "has a critical need for long-term care services due to special circumstances that may adversely affect the individual's safety." Choices for Care, 1115 Long-Term Care Medicaid Waiver Regulations § II(II)(A)(5), 4 Code of Vt. Rules 13 110 008.[1] Special circumstances are defined to include when "[t]he individual's health and welfare shall be at imminent risk if services are not provided." *Id.* § II(II)(A)(5)(c). Petitioner argues that the Board should have made findings on whether petitioner has a critical need for long-term care services, whether the need may affect petitioner's safety, and whether special circumstances exist. DAIL answers that these are conclusions of law that could not be reached because of the tie vote.

¶ 14. Whether labeled as findings of fact, conclusions of law, or mixed conclusions of fact and law, these are exactly the determinations that cannot be reached if the underlying findings

---

[1] This opinion cites to the regulations that were effective at the time of petitioner's application.

are actually *Krupp* findings. As we stated in *In re Hale Mountain Fish & Game Club, Inc.*, 2007 VT 102, ¶¶ 9-10, 182 Vt. 606, 939 A.2d 498 (mem.), we cannot review fact-based conclusions without the necessary underlying findings of fact. For this reason, we reverse and remand for proper findings.

¶ 15. Petitioner also urges reversal because the tie vote meant that the Board failed to render a decision as required by law and the affirmance of the DAIL decision based on the tie vote was improper. Because these issues may arise on remand, we address this claim.[2] We agree with petitioner's position.

¶ 16. The Board decided that the tie vote resulted in an affirmance because it understood that was the rule employed by courts.[3] In fact, the governing authority is 1 V.S.A. § 172, which provides: "When joint authority is given to three or more, the concurrence of a majority of such number shall be sufficient and shall be required in its exercise." We have held that under the statute "[t]he number of concurring votes required is a majority of all the members of the board." *In re Reynolds*, 170 Vt. 352, 354, 749 A.2d 1133, 1134 (2000). In *Reynolds*, the petitioner was seeking a required permit from a municipal planning commission, and as a result of abstentions, a majority of the commission did not vote for or against the permit. We held that the statute required a majority vote of the commission to grant a permit and the failure of a majority to vote for the permit made the action ineffective.

¶ 17. Section 172 applies unless the construction is "inconsistent with the manifest intent of the general assembly or

---

[2] We address only briefly petitioner's claim that the Board's action violated the federal fair hearing regulations applicable to Medicaid as a Social Security Act program. See 42 C.F.R. § 431.244. Petitioner argues that the action violates federal law because it contains no reasons. As we hold, *infra*, the Board action was not a decision because it failed to meet the majority vote requirements of 1 V.S.A. § 172. Thus, to the extent there may be a violation of the federal fair hearing requirement, it is in the failure to render a timely decision rather than in the required content of a decision. Courts have split on the nature of the timely decision requirement. Compare *Dickinson v. Daines*, 940 N.E.2d 905, 907 (N.Y. 2010), with *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 636 (S.D.N.Y. 2010), and *Gomolisky v. Davis*, 716 N.E.2d 970, 975 (Ind. Ct. App. 1999). We need not apply this requirement because we are reversing under Vermont law.

[3] As we point out in note 10, *infra*, this understanding is not entirely accurate, at least as to the operation of this Court.

repugnant to the context of the same statute." 1 V.S.A. § 101. The Human Services Board statute states that a quorum of the Board is normally four persons. 3 V.S.A. § 3090(c).[4] Since the quorum requirement is a different concept from a requirement that there be a specific number of votes to render a decision, we do not believe that the application of § 172 to the case decisions of the Human Services Board is inconsistent with the manifest intent of the Legislature or repugnant to the context of § 172.[5]

¶ 18. We have had occasion to address the question of what constitutes action or inaction by a board. In the context of a zoning appeal, this Court held in *In re 66 North Main Street*, 145 Vt. 1, 3, 481 A.2d 1053, 1055 (1984), that a decision not rendered by a majority of the zoning board was no decision at all. Under the particular zoning statute, however, inaction ultimately triggered the deemed approval remedy of the statute for an untimely decision. We subsequently modified the holding of *66 North Main Street* in another zoning case, *In re Newton Enterprises*, 167 Vt. 459, 464-65, 708 A.2d 914, 918 (1998). In that case, the applicant required a four-vote majority of the zoning board in order to succeed, but received three votes against, one for, and one recusal, meaning that the applicant could not prevail even if all members were present. We refused to classify this as inaction that would trigger the statutory deemed approval remedy. We held instead that the board renders a decision when "it issues a written decision and the votes are sufficient that the outcome could not change by the involvement of other members of the board." *Id.* at 465-66, 708 A.2d at 918.

---

[4] The statute provides that three members are a quorum "at any meeting upon the written authorization of the chairman issued in connection with that meeting." 3 V.S.A. § 3090(c). This did not occur in this case, and as we discuss *infra*, case decision votes do not have to be taken at a meeting. Thus, we do not view this special quorum authorization as inconsistent with the applicability of 1 V.S.A. § 172.

[5] In *Breault v. Department of Social Welfare*, 135 Vt. 41, 369 A.2d 1377 (1977), this Court affirmed a decision of the Board rendered at a hearing in which five of seven members attended. The five members split, three against and two for petitioner. This Court upheld the decision against an argument, raised in the pro se appeal, that all members of the Board should be required to participate. The opinion does not reference 1 V.S.A. § 172, but relies upon a rule of the Board. The opinion is inconsistent with § 172, and to the extent it is applicable today, we specifically hold that it is overruled.

■ ¶ 19. Although *66 North Main Street* and *Newton Enter-prises* are interpretations of the zoning appeal statute, they do attempt to define when a decision is made. Thus, the holdings are relevant outside that context, even if not necessarily determinative. Generalizing from the holdings to other boards, decisions made not in compliance with § 172 represent inaction, not action, as long as adding the votes of any members who could have but did not vote and who are not abstaining could produce a complying result, i.e. a majority of the board. A board has not acted so long as we are, so to speak, waiting on a potentially outcome-affecting vote.

■ ¶ 20. Where it is possible for a board or other joint authority to comply with § 172, the remedy is, as we held in *In re Villeneuve*, 167 Vt. 450, 459, 709 A.2d 1067, 1072 (1998), to reverse and remand for a new vote.

■ ¶ 21. This case is an example of the application of the generalization. Six members of the Board voted on petitioner's appeal because one member did not make it to the meeting where the vote was taken. Petitioner made a motion to reconsider, and all members were present to rule on the motion and denied it. This vote shows that the seventh member was not disqualified from the case and did not abstain from considering it. The six-vote tie decision occurred because the Board applied an unwritten rule that a member could not participate in the decision unless the member physically appeared at the Board meeting. In this case, the Board's vote constituted inaction.[6] *Villeneuve* applies, and on this issue, we must also remand for a new vote.

■ ¶ 22. We emphasize, however, that the result was entirely avoidable. The Board could have arranged for the vote of the seventh member. Even for administrative adjudicative bodies that hear evidence and make findings of fact, a member can participate without offending the requirements of due process of law or general statutory requirements by voting after reviewing a transcript of the testimony and other evidence or listening to a recording of the hearing and reviewing other evidence. See *In re Lakatos*, 2007 VT 114, ¶¶ 7, 10-12, 182 Vt. 487, 939 A.2d 510;

---

[6] Neither party has argued that this case is not properly before us because we are reviewing inaction on direct appeal. Our decision in *In re Lionni*, 160 Vt. 625, 626, 648 A.2d 832, 833 (1993) (mem.), appears to hold that review is proper despite the nondecision. In any event, we do not resolve this question.

*Villenueve*, 167 Vt. at 455, 709 A.2d at 1070; *Lewandoski v. Vt. State Colls.*, 142 Vt. 446, 452-53, 457 A.2d 1384, 1387 (1983).[7] The Board's governing statute does not prohibit this practice[8] and particularly does not require that votes be taken only at a meeting of the Board.[9] Such a practice is more clearly available to the Board because it relies upon hearing officers to take evidence and make findings, and the Board functions in part as an appellate body.[10]

¶ 23. Although not applicable in this case, we recognize that some votes that do not meet the majority requirement of 1 V.S.A. § 172 unavoidably occur. This would have happened if in this case a member was disqualified by a conflict of interest. The Board should minimize these circumstances. The governing statute requires the Board to "enter its order based on the findings." 3 V.S.A. § 3091(c). Its order "may affirm, modify or reverse decisions of the agency." *Id.* § 3091(d). These requirements are not met in the case of a vote that produces no majority. When such unavoidable violations of the majority requirement do occur — that is, where a board acts, but acts inconclusively — we are forced to rely upon default decisional rules, such as the proverbial "tie goes to the runner." Such default rules do not apply, however, when no action has been performed; in other words, when we are still waiting for the play to be completed.

¶ 24. Although the Human Services Board, like many administrative adjudicatory bodies in Vermont, is made up of citizens who are not necessarily experts in the substance of the work, we recognize that they develop expertise as they decide cases. For this reason, we extend deference to Board decisions when we review them. See *In re E.C.*, 2010 VT 50, ¶ 6. The Board denied petitioner's motion to reopen in part because it did not

---

[7] Our holdings do have an exception where the record represents an inadequate substitute for actual presence at the taking of evidence. See *Villenueve*, 167 Vt. at 456, 709 A.2d at 1070. It does not apply here.

[8] As stated above, the Board's rules require that proceedings related to the presentation of evidence and rulings on procedural matters be recorded. Rules § 1000.3(P). They also require that the oral arguments to the Board be recorded. *Id.* § 1000.4(B). The file as provided to us contains transcripts of both the evidentiary hearing before the hearing officer and the Board hearing.

[9] The Board's rules are also silent on this question.

[10] Thus, for example, this is exactly the practice followed by this Court. See, e.g., *In re Shenandoah LLC*, 2011 VT 68, n.1, 190 Vt. 149, 27 A.3d 1078.

want to delay the case reaching this Court for an authoritative interpretation of the CFC regulations. We do not agree with this reasoning. In our view, the quality of our decision improves when we have the informed analysis and decision of the Board. The decision before us has no reasoning or conclusions, and we do not know why either of the sides voted as it did.[11]

*Reversed and remanded for proceedings consistent with this decision.*

---

[11] Even if the Board is unable to reach a majority, Board members should explain the decision they would reach and the reasons for it.