NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 95

No. 2016-163

In re I.G.

Supreme Court

On Appeal from
Superior Court, Washington Unit,
Family Division

June Term, 2016

Marilyn Skoglund, J., Specially Assigned

William H. Sorrell, Attorney General, Montpelier, and Philip Back, Assistant Attorney General, Waterbury, for Petitioner-Appellee.

Rebecca T. Plummer, Vermont Legal Aid, Inc., Montpelier, for Respondent-Appellant.


PRESENT: Reiber, C.J., Dooley, Robinson and Eaton, JJ., and Hoar, Supr. J., Specially Assigned


¶ 1. **ROBINSON, J.** In this case, an involuntarily hospitalized patient diagnosed with schizophrenia appeals the trial court's order allowing for his involuntary medication. Patient argues that the court erred by (1) incorrectly applying the competency standard under 18 V.S.A. § 7625, and (2) failing to address whether a previously prepared document reflecting his desire not to be given psychiatric medication was a "competently expressed written . . . preference[] regarding medication" under 18 V.S.A. § 7627(b). We conclude that the trial court's findings support its conclusion under § 7625, but agree that the trial court did not squarely address patient's

argument under § 7627 in its findings.  Accordingly, we reverse on that issue and remand for the trial court to issue findings addressing the applicability of §7627(b) to patient's prior written expression of his preferences.

¶ 2.    Patient is thirty-two years old and is from Morrisville.  He was hospitalized at the Vermont Psychiatric Care Hospital (VPCH) in Berlin on April 15, 2016, pursuant to a court order stemming from his arrest and criminal prosecution for allegedly assaulting his girlfriend.  Patient had been hospitalized once before—also at VPCH—from May 5, 2015, to July 28, 2015.  During that previous hospitalization, patient was diagnosed with schizophrenia and—in July 2015— VPCH unsuccessfully sought a court order to involuntarily medicate him.

¶ 3.    In the present case, the court noted that it rejected the State's prior request to involuntarily medicate patient because the State did not prove that he was incompetent and the potential side effects of the medication outweighed its potential benefits.  Shortly after the court in the previous case decided not to involuntarily medicate him, patient was discharged from VPCH and began living at Soteria House, a residence for people with mental illness in Burlington.

¶ 4.    While there, patient signed a document purporting to be an advance directive in which he stated that he did not want any psychiatric medication because such medication caused him anger and homicidal ideation and inhibits "the limbic system from powering organs."  By a checkbox on the form, he indicated that he was aware that his stated preference might result in longer hospital stays and may result in his being involuntarily committed or treated, and he prioritized the interventions he prefers by listing seclusion, then seclusion and physical restraints combined, then physical restraints first, with medication in pill, liquid, and injection form as his lowest priorities.  Patient concedes that this document "did not meet the statutory requirements of an advance directive because it was not signed by two witnesses."

2

¶ 5.     Following his current hospitalization, the State filed an application to involuntarily medicate patient over a ninety-day period on April 21, 2016.  A hearing was held on May 4, 2016, at which the State presented one witness—patient's treating psychiatrist—and patient presented two witnesses—himself and a staff person from Soteria House.

¶ 6.     First, patient's psychiatrist testified that he had treated patient during both his previous hospitalization and his current hospitalization.  The psychiatrist described a pattern of beliefs and behaviors starting in 2012 that led him to diagnose patient with schizophrenia:

> [Patient] has shown fixed false beliefs . . . he's shown evidence of acting on persecutory delusions in a manner that seems dangerous at certain points.  He also shows disorganized thought process.  His speech wanders from topic to topic.
>
> He also shows unusual behaviors around clothing and, let's say— taking apart the seams in his clothing to replace the threads with organic material because of a preoccupation with toxins.
>
> . . .
>
> [H]e thinks medications are also toxic.  He's stuck.

Moreover, the psychiatrist testified that patient's behaviors had become more dangerous since the last time he had treated him in the summer of 2015: his "persecutory beliefs became more explicit . . . [which] led to his showing more dangerous behavior."  This dangerous behavior included the incident for which patient was arrested.

¶ 7.     Finally, the psychiatrist testified that Soteria House is for patients "who usually would prefer not to take medications" so their illnesses are managed "mostly with psychosocial interventions."  In the psychiatrist's opinion this is not the best form of treatment; medication would be a far more effective solution for patient because it "would help him sort out where the real dangers are . . . he'd be safer."  But, as the psychiatrist testified, this treatment has been

impeded because patient's schizophrenia affects his "understanding" of the medication's benefits and risks.

¶ 8.    Next, patient testified extensively about his concerns regarding the side effects of psychiatric medication: Haldol is "a very light anesthetic"; and there are "some addictive qualities to it"; "it can make you drowsy"; and it can produce "tardive diskenesia." He testified that "one of the warnings is that . . . it can cause impulsive behavior grouped with homicidal ideation." Patient also testified that he does not trust psychiatric medication because "there's a lot of kickbacks to psychiatrists from pharmaceutical companies." He summarized that he had weighed the benefits and risks of being off the medication and would prefer not taking the medication despite the risk of shortening his life span: "I see [being off the medication] as better than being on the medication because it might take years off my life."

¶ 9.    Finally, the staff person from Soteria House testified that patient had expressed his concerns about psychiatric medication several times. The staff member and patient had discussed patient's preferences about medication "on a number of occasions" and patient "was always clear that he preferred not to utilize medication." Discussing whether or not to take medication is "a very typical conversation at Soteria. . . . Everyone there is. . . . dealing with issues around medication, whether to use or whether not to use it." According to the staff member, patient "did a lot of research online" about the medication and did not want to take it because "he was concerned about side effects." The staff member did not know which websites patient had been using for research.

¶ 10.    The court issued an order on May 6, 2016, authorizing his involuntary medication for ninety days. Specifically, the court found that patient was not competent to refuse medication and that his aversion to medication was a result of his schizophrenia:

4

> [Patient's] stated reasons for refusing medication are a product of his mental illness. He is unable to make a competent, reasoned decision about whether or not medication is a reasonable form of treatment for his condition.

With respect to the preferences expressed in patient's purported advance directive, the trial court said it was "of limited assistance" to the court. In particular, the court noted that no witnesses or clinicians signed the directive, and concluded, "At most, the court accepts the directive as additional evidence that [patient] does not want to take antipsychotic medications."

¶ 11. Patient filed an appeal that same day, and the court granted a stay of its order pending appeal.

I.

¶ 12. We reject patient's argument that the court erred by incorrectly applying the competency standard under 18 V.S.A. § 7625(c). In particular, he contends that the court (1) "applied an incorrectly high standard of competency," (2) "failed to make certain required findings," and (3) "ignored or misrepresented significant testimony supporting defendant's competency." We conclude that the record supports the trial court's findings, and its findings support its conclusions. In re T.C., 2007 VT 115, ¶ 12, 182 Vt. 467, 940 A.2d 706 (noting this Court will uphold trial court's conclusions if they are not clearly erroneous and are "consistent with the controlling law and . . . supported by the findings" (quotation omitted)).

¶ 13. The first step in evaluating a petition for involuntary medication is to evaluate the patient's competency. See 18 V.S.A. § 7627(d) ("As a threshold matter, the Court shall consider the person's competency."). The competency question focuses on the patient's decisionmaking abilities:

> In determining whether or not the person is competent to make a decision regarding the proposed treatment, the Court shall consider whether the person is able to make a decision and appreciate the consequences of that decision.

5

18 V.S.A. § 7625(c) (emphasis added). The competency determination cannot be based on the patient's diagnosis alone or the merits of a psychiatrist's medical advice:

> The standard is different, and more difficult for the Commissioner to meet, from the standard for determining whether a person may be involuntarily committed because the statute focuses solely on the patient's decision-making abilities, as they may or may not be affected by mental illness—not the fact of the patient's diagnosis alone, or the merits of the psychiatrist's medical advice. If a mere diagnosis were the end of the analysis, it would preclude the need for a petition procedure altogether.

In re L.A., 2006 VT 118, ¶ 10, 181 Vt. 34, 912 A.2d 977 (emphasis added). Rather, the court must determine whether the patient properly understands the actual—not imagined—consequences of refusing medication. See id. ¶ 12, 15 ("As long as [the] patient can understand the consequences of refusing medication, the statute permits him [or her] to do so, even if refusing medication will be to his [or her] detriment" but "the consequences [the] patient must be able to appreciate must be real, and not imaginary or delusional."). The court must honor this refusal even if it is not "the best decision in light of the consequences," id. ¶ 15, and "even if refusing medication will be to [the patient's] detriment." Id. ¶ 12.

¶ 14. The evidence shows that the court applied the correct standard for competency and made sufficient findings regarding whether patient understood the consequences of refusing medication. See id. ¶ 17 (reversing and remanding for new hearing because "[t]he court made no specific findings about patient's ability to make a decision or to appreciate the consequences of that decision, such as patient's fear of developing known physical side effects from the medication." (emphasis added)). The court found that patient's beliefs show that he does not understand those consequences: (1) patient "fears that medications are poisons"; (2) he will not take "antipsychotic medications in part because of his understanding that other notorious shootings and killings were done by people with prescriptions for antipsychotic medications"; (3) "He

6

believes that Haldol is an anesthetic and that, like Demerol, it is addictive"; and (4) "He also suspects that the medications are prescribed because of a kickback scheme between pharmaceutical companies and psychiatrists." The court concluded that these stated reasons for refusing medication are a product of patient's mental illness, and that he is unable to make a competent, reasoned decision about whether or not medication is a reasonable form of treatment for his addiction.

¶ 15. The court's analysis of these beliefs was bolstered by the testimony of patient's psychiatrist. The psychiatrist testified that "during this hospitalization, [patient] has said that Haldol is related to Demerol. . . . I don't know of any connection there." The psychiatrist also testified that "his ideas about the medication and there being some association between Haldol and Demerol" are not plausible. One of the strongest themes of the psychiatrist's testimony was that patient was unable to think clearly and logically, and medication would help that: "Haldol would help that. I think it would sort out his thinking." The psychiatrist testified that "[i]t seems fairly likely" that "mental illness is playing a role in [patient's] inability to understand the consequences of his decisions now about taking the treatment." And, he agreed that patient's mental illness was impacting "his understanding that there might be improvement as a result of taking the medication and having a realistic understanding of what the risks are." Based on the psychiatrist's testimony, the court had ample evidence that patient suffered from "persecutory beliefs" and "delusions," and "[h]e also shows disorganized thought process."

¶ 16. The court's specific findings in this case contrast with the lack of specific findings in In re L.A. In that case, we reversed an involuntary medication order because the court did not actually make specific findings regarding the patient's competency. There, the trial court determined that "[i]nsofar as he refuses altogether the medications that might benefit him, [p]atient

is not competent to make a decision regarding the proposed regimen of treatment." Id. ¶ 5 (quotation omitted). We faulted this reasoning for failing to address even the first step of the competency inquiry. The competency statute only applies to patients who refuse medication, so the mere fact that patient in In re L.A. refused medication could not be a basis for finding that he was incompetent. Rather, the court was required to determine whether the "patient can understand the consequences of refusing medication." Id. ¶ 12.

¶ 17. Finally, our holding is not altered by patient's arguments that the court "failed to make certain required findings," and "ignored or misrepresented significant testimony supporting defendant's competency." Even assuming there is evidence supporting a finding that patient is competent under 18 V.S.A. § 7625, it is not our place to second-guess the court's finding; "the trial court is in the unique position to assess the credibility of the witnesses and the weight of all the evidence presented." Peckham v. Peckham, 149 Vt. 388, 390, 543 A.2d 267, 269 (1988) (quotation omitted). The trial court made specific findings based on credible evidence that are sufficient to support its conclusion that patient is not competent. The fact that other evidence may contradict those specific findings is insufficient to overturn the conclusion. See Bull v. Pinkham Eng'g Assocs. Inc., 170 Vt. 450, 454, 752 A.2d 26, 30 (2000) ("Findings are viewed in the light most favorable to the judgment, disregarding modifying evidence, and will not be disturbed merely because they are contradicted by substantial evidence; rather, an appellant must show that there is no credible evidence to support them." (citation omitted)).

II.

¶ 18. We agree with patient that the trial court did not provide any findings or conclusions as to whether the purported advance directive reflecting his desire not to be given psychiatric

medication constituted a "competently expressed written . . . preference[] regarding medication."

18 V.S.A. § 7627(b).[1]

¶ 19.    Section 7627(b) lays out the first step in the evaluation of a request to involuntarily

medicate:

> If a person who is the subject of an application filed under section 7625 of this title has not executed an advance directive, the Court shall follow the person's competently expressed written or oral preferences regarding medication, if any, unless the Commissioner demonstrates that the person's medication preferences have not led to a significant clinical improvement in the person's mental state in the past within an appropriate period of time.

If the court concludes that there are no medication preferences, or that the person's medication

preferences have not led to a significant clinical improvement in the person's mental state in the

past within an appropriate period of time, the court is required to consider a host of statutory factors

in deciding whether to issue an involuntary medication order.  18 V.S.A. § 7627(c).

¶ 20.    Patient argues that his written instructions in the document in question were

competently expressed written preferences entitled to deference subject to the exception under 18

V.S.A. § 7627(b).  He argues that his own testimony about the document shows that he was

competent in completing it, and that testimony by the Soteria House staff member supports his

contention that he was competent when he signed the document and corroborates his consistent

and considered opposition to psychiatric medication because of potential side effects.

¶ 21.    Although the trial court concluded that at the time of the hearing patient was not

competent to decide whether to accept the proposed treatment, the court made no findings as to

---

[1]  On appeal, patient concedes that this document was not executed in accordance with the advance directive statute, 18 V.S.A. § 9703.  He does not contend that the document is enforceable as an effective advance directive.

whether patient was competent at the time he wrote down his preferences.[2]  Instead, the court found, "The directive is of limited assistance to the court. . . . At most, the court accepts the directive as additional evidence that [patient] does not want to take antipsychotic medications."

¶ 22.   Although the trial court's ultimate order may be premised on the view that patient was not competent to issue the instructions in the document he filled out in July 2015, the court's written decision does not address the issue.  For several reasons, we cannot infer from the trial court's findings and conclusions the missing analysis regarding the proffered prior written expression of patient's preferences.  N. Sec. Ins. Co. v. Perron, 172 Vt. 204, 218 n.10, 777 A.2d 151, 161 n.10 (2001) (noting this Court will "not engage in appellate fact-finding" to remedy deficiencies in trial court's findings).  First, the trial court's findings expressly relate to patient's present mental state; they do not purport to be retrospective.  The court concluded, "He is unable to make a competent, reasoned decision about whether or not medication is a reasonable form of treatment for his condition." The distinction matters here because patient completed the written document in July 2015, more than nine months before the hearing on the application for involuntary medication.  Second, and more significantly, the record reflects that patient was discharged from the VPCH in July 2015, after a court rejected a petition to involuntarily medicate him.  We do not know the basis for the court's decision in connection with that prior petition,[3]

---

[2]   We note that 18 V.S.A. § 7627(b) says that "the Court shall follow the person's competently expressed written or oral preferences."  This phrase reflects the requirements that the patient be competent at the time of the expression, and that the expression itself is a product of competent consideration.

[3]   The court's prior order was not written, apparently has not been transcribed, and is not in evidence.  During the hearing in connection with this application to involuntarily medicate, the court affirmed that based on the court's notes and recollection, the prior order denying an application to involuntarily medicate patient was denied based on a combination of failure of proof on the competency issues and a benefit versus burden analysis.

but the fact that the court denied such a petition and defendant was discharged to Soteria House around the time he signed this document suggests that we cannot simply relate back the trial court's May 2016 findings to patient's status in July 2015. Third, the trial court did hear testimony about patient's mental state and understanding of the medication issues that was more contemporaneous with his execution of the document at issue.

¶ 23. Because the trial court did not address a critical issue in connection with the application for involuntary medication, we reverse the court's orders and remand for further findings. Cf. In re Rumsey, 2012 VT 74, ¶¶ 13-14, 192 Vt. 290, 59 A.3d 730 (reversing and remanding for further findings decision by Vermont Human Services Board, which failed to make findings regarding claimant's argument she was in high need of services for purposes of Medicaid).[4]

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice

---

[4] The State argues that even if patient's written preferences were competently expressed, we should nonetheless uphold the trial court's decision because the Commissioner demonstrated that patient's "medication preferences have not led to a significant clinical improvement in [patient's] mental state in the past within an appropriate period of time." 18 V.S.A. § 7627(b). As with the requirement that the preference be "competently expressed," the trial court did not address this alternative rationale for granting the State's motion. This may be an alternate ground upon which the trial court may rest its conclusions, but as with the question of whether the patient's prior written preferences were competently expressed, we look to the trial court to make findings on the question in the first instance.