STATE OF VERMONT
SUPERIOR COURT – ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| In re Regan Subdivision Permit | { | Docket No. 188-9-09 Vtec |
| (Appl. for Prelim. & Final Approval) | { | (Appeal from Burlington DRB approval) |
|  | { |  |

## Decision on Post-Judgment Motion to Clarify

On April 10, 2013, the Court issued a judgment order in this appeal to memorialize the Court's ruling from the bench after a February 13, 2013 site visit and merits hearing. At issue was the application for preliminary and final approval of a two-lot subdivision proposed by Ute Regan ("Applicant") on her parcel located at 46 Chittenden Drive in Burlington. Applicant proposed no new construction but provided a site plan delineating the possible location of a future building envelope in support of her subdivision application. Appellants DeForest Realty, Inc. ("DeForest") and Friends of Chittenden Drive ("Friends") (collectively "Appellants") appealed the City of Burlington Development Review Board's ("DRB") approval, asking this Court to consider whether the proposed subdivision meets the applicable standards and criteria in the City of Burlington Comprehensive Development Ordinance ("CDO").

Among other issues, this Court took up the thorny question of how to interpret CDO § 5.2.2, which forbids land development on lots that lack frontage on a public road, with one date-restricted exception. Applicant, for the purpose of having a clear record in the event of appeal, requests in the currently-pending motion that this Court better explain why we determined that applying the date restriction would lead to an absurd result in this particular appeal. See Shlansky v. City of Burlington, 2010 VT 90, ¶ 8, 188 Vt. 470 (stating that courts must presume that drafters intended an interpretation that would have fair and rational, rather than absurd or irrational, consequences.)

In a prior decision in this case, we extensively discussed the definition of "public road." In re Regan Subdivision Permit, No. 188-9-09 Vtec, slip op. at 5–10 (Vt. Super. Ct. Envtl. Div. Dec. 18, 2012) (Durkin, J.). We rejected the City's argument—which the City now reiterates—that the City may simply regard Chittenden Drive as a public road for purposes of CDO § 5.2.2. Id. As explained in our prior decision, because Vermont is a Dillon's Rule state, such an interpretation exceeds the scope of the City's authority under 24 V.S.A. §4412(3), which limits a municipality's ability to permit development on lots lacking public road frontage and employs

a narrower definition of "public road" than that urged by the City.  Id.  After considering evidence admitted at the merits hearing, we determined that Chittenden Drive is not a public road as that term must be interpreted pursuant to 24 V.S.A. § 4412(3) and CDO § 5.2.2.  In re Regan Subdivision Permit, No. 188-9-09 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 10, 2013) (Durkin, J.).

The state statute, however, gives municipalities the flexibility to make an exception to allow development on lots without road frontage, provided the lots benefit from permanent access easements or rights of way over twenty feet wide.  See 24 V.S.A. §4412(3).  Indeed, the CDO contains such an exception: "development may be permitted with approval of the DRB, if access to such road or public waters exists by a permanent easement or right-of-way of at least twenty-five (25) feet in width."  CDO § 5.2.2.  However, the CDO's exception applies only to "lots of record existing as of January 1, 2007."  Id.[1]  In our pretrial ruling, we flagged the date restriction issue for further explication at trial:

> [T]he parties and their advocates deserve the opportunity to argue as to whether this restriction has a rational relation to the purpose of CDO Article 5 and whether applying the provision could lead to absurd results in this case.  In particular, we will be considering the safety implications—or lack thereof—of subdivision and development on lots with frontage on a 30-foot-wide paved road that has served several residences for decades and that already contains water and sewer lines.  We are particularly concerned about a literal application of CDO § 5.2.2, because the definition of "development" includes the act of subdivision itself.  CDO § 13.1.2.

In re Regan Subdivision Permit, No. 188-9-09 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Dec. 18, 2012) (Durkin, J.).  Although we hoped to receive clarification from Appellant or from the City at trial as to the operation of the date restriction in CDO § 5.2.2, no witness provided an explanation sufficient to enable us to enforce it in this case.  To the contrary, evidence received at trial further increased our concern.  We now attempt to clarify why the date restriction creates irrational results that this Court cannot endorse concerning this application.

There is no doubt that Applicant's original parcel, created in 1955, is a lot of record existing as of January 1, 2007.  Access to the nearest public road, Route 7, exists by a permanent

---

[1]  In its pertinent parts, CDO § 5.2.2 provides that:

> No land development may be permitted on lots that do not have frontage on a public road or public waters. . . . .
>
> For lots of record existing as of January 1, 2007, development may be permitted with approval of the DRB, if access to such road or public waters exists by a permanent easement or right-of-way of at least twenty-five (25) feet in width.

right-of way at least twenty-five feet in width: Chittenden Drive itself, a paved roadway approximately 30 feet wide that contains water and sewer lines and has long served multiple existing residences. Upon first glance, then, it would seem that the DRB (and this Court standing in its place) has the ability to approve subdivision of the lot under CDO § 5.2.2, because the CDO and the state statue both define "development" to include the act of subdivision. See CDO § 13.1.2; 24 V.S.A. § 4303(10).

The problem, however, is that in considering the subdivision application now before us, this Court must focus on the viability of the two <u>new lots</u> to be created.[2] Indeed, the CDO itself provides that "[l]ots shall be created in such a way as to enable their development pursuant to the requirements of this ordinance, and ensure a clear transfer of title." CDO § 6.1.2(c). In this case, however, the creation of these two new lots constitutes "development" (which the CDO defines as including subdivision) and their future "development" becomes problematic because the new lots would have been created after January 1, 2007 and therefore not permitted by CDO § 5.2.2. Thus, the CDO would require the DRB to carefully consider allowing the subdivision of pre-January 1, 2007 lots on adequately wide private roads, but at the same time would effectively <u>prohibit</u> the DRB from allowing such subdivision, as the post-January 1, 2007 lots would be undevelopable. This result appears irrational.

Also problematic is the notion that the prohibition on development would apply to <u>both</u> of the lots created by Applicant's proposed subdivision, including the lot which would contain her existing residence. Thus, after subdivision, Applicant would be prohibited from so much as renovating her existing home while Chittenden Drive remains a private road, even though under CDO § 5.2.2 she could have done so before subdividing her lot with DRB approval and even though her neighbors with pre-January 1, 2007 lots could still conduct development on their lots with DRB approval. This also appears to be an irrational outcome.

Our decision was further informed by other facts that emerged through evidence received at trial. First, testimony indicated that the City does not apply the access way exception within CDO § 5.2.2 to all "development" for the many properties on the over 65

---

[2] The Town's witness, City of Burlington Senior Planner Scott Gustin, stated that his understanding of the process of subdividing Applicant's existing parcel into two parcels is that only one new lot would be created: the vacant one. He testified that in his view, the lot containing Applicant's existing residence would continue to retain its status as a lot created in 1955. This is incorrect. Subdivision of a lot creates new parcels that are each newly created at the time of subdivision, and the original lot no longer exists. See, e.g., <u>In re Shenandoah, LLC</u>, No. 245-10-08 Vtec, slip op. at 7 (Vt. Envtl. Ct. Sept. 11, 2009) (Durkin, J.), aff'd 2011 VT 68, 190 Vt. 149.

streets within the City that are not categorized as public roads. City of Burlington Senior Planner Scott Gustin testified that the exception's date restriction was meant to address—and has historically been applied to—only the creation of "backyard lots,"[3] not development on lots with frontage on established private roads.[4] Whatever underlying goal the City has in mind, it may not interpret its zoning ordinance in a manner contrary to the plain meaning of that ordinance, leaving Burlington residents to guess whether and how restrictive provisions might apply to their property. While we do not endorse the "backyard lot" interpretation of CDO § 5.2.2, however, we regard the City's practice of routinely ignoring the date restriction as a further basis for this Court's concern over the restriction's discernible purpose in regards to the subdivision proposed here.

Second, it became clear during the trial, both through the oral testimony of Scott Gustin and various versions of the City's zoning ordinance submitted as the City's Exhibit AA and DeForest's Exhibits 4 and 5, that the City habitually updates the date restriction portion of this provision when it updates its ordinance, even on occasions when the City does not substantively alter the provision itself.[5] Under this automatic updating practice, the two undevelopable lots that Applicant may create in 2013 would simply become further developable at the next update of the ordinance. This practice alone appears to nullify any potential grandfathering purpose the provision might have, and no party was able to provide an adequate explanation as to how the date restriction of this particular provision serves a grandfathering function.

---

[3] This Court understands the term "backyard lots" to refer to lots that are subdivided roughly parallel to, rather than roughly perpendicular to, an existing street (i.e., subdivided so that the boundary line does not touch an existing street), leaving the "back lot" with no road frontage. Incidentally, no party argues that Applicant proposes the creation of a backyard lot.

[4] In its motion in response to Applicant's motion to clarify, the City offers yet another interpretation of the date restriction: that it should apply "to new subdivisions, not development generally." (City's Resp. to Applicant's Mot. for Clarification at 3, filed May 13, 2013.) We do not endorse this interpretation either. The City points out that this Court's April 10 order memorializing our decision issued on the record at the hearing used the word "subdivision" in reference to the language of CDO § 5.2.2 and 24 V.S.A. § 4412(3). (City's Resp. to Applicant's Mot. to Clarify at 3, filed may 13, 2013.) We did not, by our order, intend to read CDO § 5.2.2 and 24 V.S.A. § 4412(3) to refer to subdivision exclusively; rather, both the CDO and the state statute refer to "development," which includes subdivision.

[5] For example, the 1990 version of the ordinance allows, with permission of the planning commission, development of lots of record existing as of January 1, 1988 where a permanent easement or right-or-way at least 25 feet wide exists, while the current version of the ordinance allows, with permission of the DRB, development of lots of record existing as of January 1, 2007 where a permanent easement or right-or-way at least 25 feet wide exists.

Our interpretation is also in keeping with the applicable state statute, which allows municipalities to provide flexibility for development on non-public roads on a case-by-case basis; indeed CDO § 5.2.2, in the absence of its date restriction, provides this very flexibility. If the City wishes to clarify that it intends the date restriction portion of the access way exception to apply not to "development" as defined in the ordinance (the way the provision currently reads), but rather to back yard lots only, to the act of subdivision only, or to some other situation, it remains free to alter the plain language of the CDO accordingly.

Applicant appears to urge this Court to rule that her future development of either of the two lots created by this subdivision cannot be barred by the language of CDO § 5.2.2. We decline to incorporate such a broad interpretation of our rulings and judgment order, for the simple reason that Applicant has not presented a development plan for either lot in the application that was before the Court. Were we to adopt Applicant's reasoning, we would be rendering an impermissible advisory opinion on an application not yet presented to us. We do not intend our rulings here to be read so broadly. See In re Appeal of 232511 Investments, Ltd., 2006 VT 27, ¶¶ 18–19, 179 Vt. 409.

In summary, we issue this Decision as a clarification of our prior Judgment Order. With this post-judgment Decision, we **GRANT** Applicant Ute Regan's motion to clarify. In all other respects, our April 10, 2013 Judgment Order remains in full force and effect.

This concludes the current proceedings on this matter before this Court.

Done at Newfane, Vermont this 18th day of June, 2013.

_____
Thomas S. Durkin, Environmental Judge

5